UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SOLOMON SHARBAT, SOLOMON CAPITAL LLC,
SOLOMON CAPITAL 401(K) TRUST, SHELHAV RAFF,

PLAINTIFFS,

V.

IOVANCE BIOTHERAPEUTICS, INC., F/K/A LION
BIOTECHNOLOGIES INC. F/K/A GENESIS BIOPHARMA,
INC., AND MANISH SINGH,

DEFENDANTS.

---

**DEFENDANT IOVANCE
BIOTHERAPEUTICS, INC.'S
MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO
DISMISS FOR LACK OF
PERSONAL JURISDICTION**

CIVIL ACTION NO: 1:20-CV-01391

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND ....................................................................................................... 3

    A. Procedural History ......................................................................................... 3

    B. The Parties And Nonparty MBA Holdings, LLC ........................................... 4

    C. Plaintiffs' Allegations .................................................................................... 6

    D. Jurisdictional Facts......................................................................................... 8

    E. Plaintiffs' New Allegations Concerning Jurisdiction ..................................... 9

III. THE COURT LACKS PERSONAL JURISDICTION OVER IOVANCE .................. 11

    A. Plaintiffs Bear The Burden To Show Jurisdiction .......................................... 11

    B. Plaintiffs Cannot Show General Jurisdiction.................................................. 12

    C. Plaintiffs Cannot Show Specific Jurisdiction ................................................. 14

        1. Iovance's Business Activities Do Not Give Rise To Jurisdiction .......... 16

            (a) Iovance Did Not "Transact Business" In New York ................. 16

            (b) None Of Plaintiffs' Claims "Arise From" Iovance's New York Contacts ........................................................................ 22

        2. Iovance Did Not Commit A Tort In New York...................................... 23

        3. There Is No Jurisdiction Based On Alleged Out-Of-State Torts ............ 24

        4. There Is No Jurisdiction Based On Real Property .................................. 25

IV. CONCLUSION........................................................................................................ 25

03424-0008  338195.1

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aaron Consulting Co. v. Snap Sols. LLC*
   No. 16-CV-6775 (NGG), 2018 WL 4568800 (E.D.N.Y. Sept. 24, 2018) .............................23

*Air Innovations Inc. v. Barker Co.*
   No. 5:08-CV-1305, 2010 WL 11494032 (S.D.N.Y. Jun. 17, 2010) ........................................22

*Alibaba Grp. Holdings Ltd. v. Alibabacoin Found.*
   No. 18-CV-2897 (JPO), 2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018) ..................................16

*Anderson v. Indiana Black Expo, Inc.*
   81 F. Supp. 2d 494 (S.D.N.Y. 2000)................................................................................20, 24

*Berkshire Cap. Grp., LLC v. Palmet Ventures, LLC*
   307 F. App'x 479 (2d Cir. 2008) ...........................................................................................19

*Best Van Lines, Inc. v. Walker*
   490 F.3d 239 (2d Cir. 2007)....................................................................................................16

*Biz2Credit, Inc. v. Kular*
   No. 14 Civ. 8223(ER), 2015 WL 2445076 (S.D.N.Y. May 21, 2015) ...................................19

*Bristol-Myers Squibb Co. v. Superior Court*
   137 S. Ct. 1773 (2017)..................................................................................................12, 15, 23

*Brown v. Lockheed Martin Corp.*
   814 F.3d 619 (2d Cir. 2016)....................................................................................................13

*Cambridge Energy Corp. v. Tri-Co Fuels, Inc.*
   637 F. Supp. 1210 (S.D.N.Y. 1986)..................................................................................20, 21

*Daimler AG v. Bauman*
   571 U.S. 117 (2014)..............................................................................................1, 12, 13

*Fontanetta v. Am. Bd. Of Internal Medicine*
   421 F.2d 355 (2d Cir. 1970).....................................................................................................15

*Giuliano v. Barch*
   No. 16 CV 0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) ................................21

*Gucci Am., Inc. v. Weixing Li*
   768 F.3d 122 (2d Cir. 2014).....................................................................................................13

ii

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*
  921 F.3d 522 (5th Cir. 2019) ...................................................................14

*ICO Servs., Ltd. v. Coinme, Inc.*
  No. 18 Civ. 4276 (LGS), 2018 WL 6605854 (S.D.N.Y. Dec. 17, 2018) ...................16, 17, 19

*In re Terrorist Attacks on Sept. 11, 2001*
  714 F.3d 659 (2d Cir. 2013)............................................................12, 14

*Jonas v. Estate of Leven*
  116 F. Supp. 3d 314 (S.D.N.Y. 2015)...............................................15

*Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*
  264 F.3d 32 (2d Cir. 2001).............................................................12

*Mende v. Milestone Tech., Inc.*
  269 F. Supp. 2d 246 (S.D.N.Y. 2003).............................................15

*Merritt v. Airbus Ams., Inc.,*
  202 F. Supp. 3d 294 (E.D.N.Y. 2016) ............................................15

*New World Capital Corp. v. Poole Truck Line, Inc.*
  612 F. Supp. 166 (S.D.N.Y. 1985)..................................................18

*Pablo Star Ltd. v. Welsh Gov't*
  170 F. Supp. 3d 597 (S.D.N.Y. 2016).............................................11, 12

*Panacea Solutions, Inc. v. Roll*
  No. 05 Civ. 10089(RCC), 2006 WL 3096022 (S.D.N.Y. Oct. 31, 2006)...............................24

*Rosenblatt v. Coutts & Co. AG*
  750 F. App'x 7 (2d Cir. 2018) .......................................................17

*Schentag v. Nebgen*
  No. 1:17-cv-8734-GHW, 2018 WL 3104092 (S.D.N.Y. Jun. 21, 2018)...........................20, 21

*Snyder v. Ply Gem Indus., Inc.*
  200 F. Supp. 2d 246 (S.D.N.Y. 2001)..............................................22

*Sonera Holding B.V. v. Çukurova Holding A.S.*
  750 F.3d 221 (2d Cir. 2014)...........................................................13, 14

*Tannerite Sports, LLC v. NBCUniversal Media LLC*
  135 F. Supp. 3d 219 (S.D.N.Y. 2015)..............................................2, 16, 18

## <u>TABLE OF AUTHORITIES (cont.)</u>

**<u>Page(s)</u>**

*Timothy Coffey Nursery Landscape Inc. v. Soave*
   760 F. App'x 58 (2d Cir. 2019) ..............................................................................24

*Virgin Enters. Ltd. v. Virgin Eyes LAC*
   No. 08 CV 8564(LAP), 2009 WL 3241529 (S.D.N.Y. Sept. 30, 2009)...........................11, 16

*Walden v. Fiore*
   571 U.S. 277 (2014)..................................................................................1, 14, 15

*Weisberg v. Smith*
   473 F. Supp. 2d 604 (S.D.N.Y. 2007)...........................................................22

*Whitaker v. Am. Telecasting, Inc.*
   261 F.3d 196 (2d Cir. 2001)..........................................................................24

**NEW YORK CASES**

*Ehrenfeld v. Mahfouz,*
   9 N.Y.3d 501 (2007) ...............................................................................14, 15

**NEW YORK STATUTES**

CPLR § 302(a)(1) .............................................................................2, 16, 18, 19, 20, 22, 23

CPLR § 302(a)(2) ...........................................................................................2, 23, 24

CPLR § 302(a)(3) ...........................................................................................2, 24, 25

CPLR § 302(a)(4) ...............................................................................................25

iv

Defendant Iovance Biotherapeutics, Inc. f/k/a Lion Biotechnologies Inc. f/k/a Genesis Biopharma Inc. ("Iovance")[1] submits this memorandum of law in support of its Motion to Dismiss for Lack of Personal Jurisdiction.

## I.     **INTRODUCTION**

This case does not belong in New York.  Iovance is a Delaware corporation with its principal place of business in California.  The plaintiffs are residents of Israel, suing Iovance and another California resident (Manish Singh) as a supposed third-party beneficiary of an agreement between Iovance and another California resident, nonparty MBA Holdings, LLC ("MBA").  Plaintiffs acknowledge that "the claims in this action are to be governed and the agreements construed under the laws of the State of California."  (Amended Complaint ("AC") ¶ 22.)  The facts at issue in this lawsuit transpired in California and in Israel.

Iovance is not subject to either general or specific personal jurisdiction in New York.  Other than maintaining a small office with one employee, representing less than 1% of its workforce, Iovance had no presence in New York when plaintiffs filed this lawsuit or at any time thereafter.  Much less does Iovance maintain contacts with New York that are "so 'continuous and systematic' as to render [it] essentially at home" here, as required for general jurisdiction.  *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014) (citation omitted); *see also id.* at 138 n.18 (rejecting a claim of general jurisdiction "based on the presence of a local office").

Nor did Iovance engage in "suit-related conduct [creating] a substantial connection with" New York, as would be required to subject it to specific personal jurisdiction.  *Walden v. Fiore*, 571 U.S. 277, 281 (2014).  Plaintiffs' claims do not arise from Iovance's contacts with New

---

[1]     In their response to Iovance's request for a pre-motion conference, plaintiffs accused Iovance of a "sleight of hand" for referring to itself as Iovance rather than Lion Biotechnologies.  (Dkt. 11 at 1.)  But as plaintiffs' own caption acknowledges, the company's name is Iovance Biotherapeutics and it has been since June 27, 2017. (Declaration of Frederick G. Vogt ("Vogt Decl.") ¶¶ 3-4.)

1

York.  Iovance entered into the transactions at issue in California, with residents of California and Israel, for services to be performed outside of New York.

On February 24, 2020, Iovance informed the Court and plaintiffs of its intention to move to dismiss the case for lack of personal jurisdiction.  In response, plaintiffs requested (and the Court granted) leave to amend their complaint "to replead jurisdictional facts sufficient to establish personal jurisdiction over Defendant pursuant to CPLR §302(a)."  (Dkt. 11 at 2.)  But far from showing a basis for personal jurisdiction, plaintiffs' new version of their complaint concedes that "neither party resides in the State of New York."  (AC ¶ 21.)  Instead, plaintiffs offer a series of rote allegations tracking the language of New York's long-arm statute – CPLR §§ 302(a)(1), 302(a)(2), and 302(a)(3).  (*Id.* ¶¶ 11-12, 19.)  These conclusions do not advance plaintiffs' claim that Iovance is subject to personal jurisdiction.  "[A] plaintiff may not rely on conclusory non-fact-specific jurisdictional allegations to overcome a motion to dismiss." *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 228 (S.D.N.Y. 2015).

Plaintiffs are unable to even allege, much less substantiate, facts establishing a "substantial connection" between their claims and Iovance's New York conduct.  In place of such facts, plaintiffs rely entirely upon Iovance's dealings with third parties, which are unrelated to the claims asserted in this action.  Plaintiffs do not allege that *they* ever met with Iovance in New York, nor do they claim that either they or Iovance were located in New York at the time they negotiated, entered into, or performed the alleged agreements they are suing Iovance for breaching.  Nor could plaintiffs, as residents of Israel, allege that they suffered jurisdictionally relevant consequences from anything Iovance did in New York.  And while plaintiffs purport to assert jurisdiction for supposed tortious conduct under CPLR §§ 302(a)(2) and 302(a)(3), they do not even allege that Iovance committed a tort, let alone that it did so in New York.

It is particularly telling that plaintiffs are now seeking to subject Iovance to personal jurisdiction in this case on the ground that Raff "laid out $35,000" to New World Merchant Partners ("New World"), "a New York merchant banking firm."  (AC ¶¶ 15, 44.)  Not only does such conduct fall far short of establishing that Iovance established a "substantial connection" with New York, plaintiffs are not suing Iovance over Raff's New World expenditure in this action.  Indeed, while the initial version of plaintiffs' complaint sought to enforce Iovance's alleged agreement to provide "shares or promissory notes" in exchange for the funds he claims to have "laid out" (Exh. A to Declaration of Russell I. Glazer ("Glazer Decl.") at ¶¶ 38, 101-10), plaintiffs have dropped this claim from the case.  This is very likely because plaintiffs are suing Iovance to enforce that agreement in a separate action entitled *Solomon Capital, LLC et al. v. Lion Biotechnologies, Inc.*, Index No. 651881/2016, which they filed on April 8, 2016 (at a time when Iovance's principal place of business was in New York).  (Glazer Decl. ¶ 18.)  Plaintiffs cannot subject Iovance to personal jurisdiction based on a claim it is not pursuing in this Court.  As their Amended Complaint reveals, Iovance did not establish sufficient connections with New York to subject it to personal jurisdiction on the claims asserted in this case.

## II.   BACKGROUND

### A.   Procedural History

Plaintiff filed this action against Iovance and its former Chief Executive Officer, Manish Singh, in the Supreme Court of the State of New York, County of New York on September 27, 2019.[2]  (Glazer Decl. ¶ 2 & Exh. A.)  Plaintiffs filed an amended complaint on January 17, 2020.  (*Id.* ¶ 3 & Exh. B.)  The same day, plaintiffs served the summons, the original complaint and the

---

[2]   As noted above, this is the second lawsuit that plaintiffs filed against Iovance in New York.  Plaintiffs filed their complaint in *Solomon Capital, LLC et al. v. Lion Biotechnologies, Inc.*, Index No. 651881/2016 on April 8, 2016.  (Glazer Decl. ¶ 17.)  That matter is still pending before the Honorable O. Peter Sherwood of the New York Supreme Court.  Sharbat and Raff were both deposed in that action and, as discussed herein, provided testimony establishing that they were located in Israel at all times during their alleged efforts for Iovance.

amended complaint on Iovance by serving the New York Secretary of State pursuant to N.Y.

Bus. Corp. Law § 306(b)(1).  (*Id.* ¶ 6 & Exh. D.)  Plaintiffs only recently requested that the Court

issue a summons directed to Singh and he has not yet appeared in the case.  (*Id.* ¶ 11.)

On February 18, 2020, Iovance removed the case to this Court on grounds of diversity of

citizenship.  (*Id.* ¶ 7.)  Pursuant to Rule 2(A) of the Court's Individual Practices, on February 24,

2020, Iovance sent the Court a letter requesting a pre-motion conference.  The letter explained

that "Iovance intends to move to dismiss the claims against it for lack of personal jurisdiction"

and set forth the basis of the anticipated motion.  (Dkt. 7.)

The Court conducted the pre-motion conference telephonically on April 15, 2020.

(Glazer Decl. ¶ 8.)  During the conference plaintiffs requested leave to file an amended

complaint to include new allegations supporting personal jurisdiction in New York.  (*Id.*)  The

Court ordered plaintiffs to file their amended complaint by May 1, 2020 and ruled that Iovance

could file this Motion without requesting another pre-motion conference.  (*Id.*)  The Court set the

following briefing schedule: Iovance's Motion would be due on May 22, 2020, Plaintiffs'

Opposition would be due on June 12, and Iovance's Reply would be due on June 26.  (*Id.*)[3]

Plaintiffs filed the current version of their complaint on May 1, 2020.  Although, as

discussed above, plaintiffs filed an amended complaint on January 17, 2020, they also titled the

May 1, 2020 version of their complaint, "Amended Complaint."  Accordingly, Iovance will use

the term "Amended Complaint" (or "AC") to refer to the currently operative complaint.

### B.    The Parties And Nonparty MBA Holdings, LLC

There are four plaintiffs in this action: Solomon Sharbat ("Sharbat"), Solomon Capital

LLC ("SC"), Solomon Capital 401k Trust (the "Trust"), and Shelhav Raff ("Raff").  (AC ¶¶ 2-5.)

---

[3]    The Court also ordered plaintiffs to provide notice, no later than April 17, 2020, as to whether plaintiff Solomon Capital LLC had any members other than Solomon Sharbat so that the Court could evaluate whether it lacked diversity jurisdiction.  (Glazer Decl. ¶ 9.)  To Iovance's knowledge, plaintiffs did not do so.  (*Id.*)

4

Raff and Sharbat are residents and citizens of Israel.  (AC ¶¶ 2, 3; Exh. P to Glazer Decl. at ¶ 2.)

Raff has lived in Israel his entire life, and Sharbat has lived there since 2010.  (Exh. O to Glazer

Decl. at 8:12-14; Exh. N to Glazer Decl. at 27:3-13.)

Plaintiffs allege that "Plaintiff SC is a domestic limited liability company organized and

existing pursuant to the laws of the State of New York with its place of business located at 67-34

Kessel Street, Forest Hills, New York."  (AC ¶ 4.)  However, Solomon Sharbat is the sole

member of Solomon Capital LLC.  (Exh. N to Glazer Decl. at 41:6-10.) The business has no

employees or officers, and its sole business activity is to serve as a "holding company" for

investments that Sharbat makes.  (*Id.* at 39:19 - 42:21.)  In Sharbat's words, SC is a "one-man

show" run solely by him.  (*Id.* at 42:3.)

Plaintiffs allege that "Plaintiff Solomon Capital 401k Trust is a qualified retirement trust

organized under the laws of the State of New York," that "Sharbat serves as the trustee of the

trust," and that "[t]he Trust's principal place of business is New York, New York." (AC ¶ 5.)  In

truth, the Trust is Sharbat's retirement fund, which he manages from his home in Israel.  (Exh. N

to Glazer Decl. at 48:22 – 49:23; 219:15-19.)  In a declaration Sharbat submitted to a federal

court in California on February 3, 2014, Sharbat explained: "I manage my business affairs in

Israel.  I have no address in the United States anymore."  (Exh. P to Glazer Decl. at ¶ 3.)  As

proof, Sharbat provided brokerage statements for SC and the Trust, "indicating my Israeli

address."  (Exh. P to Glazer Decl. at ¶ 4 & Exhs. A & B thereto.)

Iovance is a publicly traded biotechnology company focused on the development of

cancer therapies.  (Vogt Decl. ¶ 2.)  From its inception until June 2017, Iovance was a

corporation organized under the laws of the State of Nevada.  (*Id.* ¶¶ 3-4.)  On June 1, 2017,

5

Iovance reincorporated under the laws of the State of Delaware.  (*Id*. ¶ 4.)  Since October 2016, Iovance's principal place of business has been in San Carlos, California.  (*Id.* ¶¶ 7-8.)

Defendant Singh was Iovance's Chief Executive Officer ("CEO") from July 24, 2013 to December 31, 2014.  (*Id.* ¶ 11.)  Singh resides in California.  (AC ¶ 9.)

Nonparty MBA is a California limited liability company located in Santa Monica, California.  (Exh. F to Glazer Decl. at item 3 & Exh. K to Glazer Decl. at § 4.)  Nonparty Mark Beychok is manager and Chief Executive Officer of MBA.  (Exh. K to Glazer Decl. at §§ 5 & 8.) Beychok resides in Beverly Hills, California.  (*Id.*)  On August 18, 2015, MBA filed suit against Iovance in the Superior Court for the State of California, County of Los Angeles, based on allegations similar to those at issue in plaintiffs' amended complaint.  (Glazer Decl. at ¶ 13 & Exh. F.)  On December 15, 2015, MBA dismissed its complaint without prejudice in response to a demand from Iovance's counsel.  (Glazer Decl. at ¶ 15 & Exh. H.)

### C.    Plaintiffs' Allegations

Plaintiffs' complaint is based on the following allegations:

Plaintiffs "are in the business of, *inter alia*, assisting and consulting firms with respect to fundraising, mergers, and strategic alliances and introductions."  (AC ¶ 23.)  "In or around the summer of 2012, Plaintiffs were introduced to Mark Beychok . . . chief executive officer and managing member of MBA Holdings, LLC ('MBA'), a California based consulting firm."  (*Id.* ¶ 25.)  Beychok introduced plaintiffs to Iovance's then Chief Financial Officer ("CFO"), Michael Handelman, and its then Chief Executive Officer ("CEO"), Anthony Cataldo.  (*Id.* ¶ 26.)

According to plaintiffs, Handelman discussed "the potential role Plaintiffs would play" in Iovance's growth, "to wit, their assistance in helping [Iovance] raise $30,000,000 to expand and develop their intellectual property."  (*Id.* ¶ 28.)  Handelman also "acknowledged that Plaintiffs

6

would work alongside of MBA." (*Id.* ¶ 29.)  Specifically, plaintiffs allege that they were either

"direct parties" or "intended beneficiaries" of a June 15, 2012 Letter Agreement between

Iovance and MBA "whereby MBA was to act as consultant to [Iovance] and 'act as finder to

seek financing and other strategic relationships for [Iovance].'" (*Id.* ¶¶ 30, 37-38.)  Plaintiffs

claim that they were entitled to receive 20% of the funds invested.  (*Id.* ¶ 33.)

Plaintiffs claim that commencing in 2012 they "began to perform pursuant to the Letter

Agreement by way of seeking potential investors."  (*Id.* ¶ 30.)  They allege that, as a result of

their efforts, investors they introduced to Iovance invested seventy million dollars in the

company in 2013 and 2014.  (*Id.* ¶¶ 39-44.)  Plaintiffs contend that they are entitled to

commissions totaling tens of millions of dollars.  (*Id.* ¶ 44.)

In addition to these allegations, plaintiffs contend that Singh (who replaced Cataldo as

Iovance's CEO in 2013) arranged for Iovance to conduct a financing "for the purpose of gaining

the financial benefit for himself and cutting the Plaintiffs out."  (*Id.* ¶ 47.)  They also claim that

Singh hid "updates with respect to some prospective investors," that he "began to attempt to limit

the class of qualified introductions for which Plaintiffs would be entitled to fees," and that he

"misrepresent[ed] the amounts expected to be raised from Plaintiffs' qualified introductions."

(*Id.* ¶¶ 51, 52, 53.)  Plaintiffs allege "[u]pon information and belief" that Singh gave them

"incorrect and misleading information in an effort to make it impossible for them to attract

investors."  (*Id.* ¶ 58.)  They claim "[u]pon information and belief" that Singh received 608,000

shares "that should have been offered to Plaintiffs and were their rightful property."  (*Id.* ¶ 59.)

Finally, plaintiffs claim that "[i]n addition to the terms of the Letter Agreement,

[Iovance] promised that if Plaintiffs raised $3-5 million for it, Plaintiffs would be granted an

exclusive license to distribute [Iovance's] cancer treatment methods in Israel."  (*Id.* ¶ 61.)

Plaintiffs assert seven causes of action.  In their first claim, plaintiffs allege that Iovance breached the Letter Agreement between Iovance and MBA and that Iovance "knew that its breach of contract with MBA would result in injury to Plaintiffs, in that Plaintiffs would not receive compensation for the services it [sic] rendered."  (*Id.* ¶ 74.)  In their second claim, plaintiffs allege that Iovance committed a breach of contract "by failing to issue 1.5 million unrestricted shares, half to MBA and half to Solomon, as an intended third party beneficiary who assisted in the provision of the consulting services."  (*Id.* ¶ 81.)  In their third claim, plaintiffs claim that Iovance breached its agreement to grant a license to them.  (*Id.* ¶ 85.)  In their fourth claim, plaintiffs claim that Iovance has been unjustly enriched because plaintiffs performed services with Iovance's "knowledge and understanding that Plaintiffs would be compensated for their work by receiving a fee or a portion of that fee that would be due and owing to MBA."  (*Id.* ¶ 88.)  Plaintiffs' fifth and sixth causes of action are against Singh, for fraud and conversion, respectively. (*Id.* ¶¶ 95-105.)  Plaintiffs' seventh cause of action is for indemnification of their litigation costs, based on the assertion that Iovance "promised to indemnify MBA under the Letter Agreement for any litigation costs arising out of the Letter Agreement."  (*Id.* ¶ 107.)

### D.   <u>Jurisdictional Facts</u>

As noted, Iovance is a Delaware corporation with its principal place of business in San Carlos, California.  (Vogt Decl. ¶¶ 4, 7-8.)  At the time of the events at issue in this lawsuit, Iovance's principal place of business was in Los Angeles, California and later in Woodland Hills, California.  (*Id.* ¶¶ 5-6, 9.)  Iovance maintained its principal place of business in New York from July 2015 until October 2016 (nearly three years before plaintiffs filed this action), when Iovance moved its corporate offices back to California.  (*Id.* ¶¶ 6-8.)  Since that time, Iovance has maintained a small office, consisting since 2018 of one employee, representing less than 1%

of its employees, in New York.  (*Id.* ¶ 10.)  Iovance does not conduct sales in New York.  (*Id.*)
Its headquarters are not located in New York.  (*Id.* ¶ 8.)  Its manufacturing facility is not located
in New York.  (*Id.* ¶ 10.)  Its research facility is not located in New York.  (*Id.*)

Like Iovance, defendant Singh also resides in California.  (AC ¶ 9.)

The individual plaintiffs resided in Israel at all times referenced in the lawsuit and they
continue to do so through the present day.  (AC ¶¶ 2-3.)  While plaintiffs claim that Plaintiff SC
has its principal "place of business" in Forest Hills, New York, no activities occur there.  Instead
the company is run exclusively by Sharbat (its sole owner) from his residence in Israel, by his
own sworn admission.  (Exh. P to Glazer Decl. at ¶ 3.)  Sharbat also makes all decisions related
to the Trust in Israel.  (*Id.*)  All of the dealings between plaintiffs and Iovance took place in
California and Israel.  (Vogt Decl. ¶ 9.)

Plaintiffs acknowledge in their Amended Complaint that "[p]ursuant to the agreements
between the parties . . . the claims in this action are to be governed and the agreements construed
under the laws of the State of California."  (AC ¶ 12.)  As discussed above, in this action
plaintiffs are seeking to enforce rights purportedly arising from a Letter Agreement between
Iovance and MBA, a consulting company owned by third party Mark Beychok.  The Letter
Agreement provides, "This Agreement shall be construed in accordance with the laws of the
State of California without giving effect to the principles of conflicts of laws thereof."  (Exh. G
to Glazer Decl. at § 9.4.)  Beychok and MBA are both located in California.  (Exh. K to Glazer
Decl. at §§ 4 & 5.)

E.    **Plaintiffs' New Allegations Concerning Jurisdiction**

Following the April 15, 2020 pre-motion conference, plaintiffs amended their complaint
in an effort "to replead jurisdictional facts sufficient to establish personal jurisdiction over

Defendant pursuant to CPLR §302(a)."  (Dkt. 11 at 2.)  To that end, plaintiffs added a handful of conclusory assertions under the heading "Jurisdiction and Venue" tracking the language of section 302(a) and other buzz words related to personal jurisdiction.  Thus, plaintiffs have included a few short, vague, and conclusory sentences stating that "Defendants . . . transacted business in New York and contracted for goods and services within the state of New York" which are "substantially, in fact directly, related to the claims asserted herein" (AC ¶ 11); that "Defendants . . . committed many, if not all, of the tortious acts hereinafter alleged within the state of New York" (*Id.* ¶ 12); and that "the agreement(s) governing various aspects of the case . . . were negotiated and/or entered into within the state of New York" (*Id.* ¶ 13).  But plaintiffs do not identify such agreement(s) (there were none), and they continue to acknowledge that "the claims in this action are to be governed and the agreements construed under the laws of the State of California."  (*Id.* ¶ 22.)

In a similar fashion, plaintiffs allege "[m]any, of the acts, events, and transactions . . . which are substantially related" to plaintiffs' claims "occurred, and were performed, negotiated and executed in the State of New York" (*Id.* ¶ 14); "Defendants committed tortious acts without the state which caused injury to persons within the state and upon information and belief regularly do or solicit business in New York, engage in a persistent course of conduct, and derive substantial revenue from services rendered" (*Id.* ¶ 19); and "upon information and belief, Defendants derive substantial revenue from interstate commerce and should have reasonably expected their acts to have consequences in New York" (*Id.*).[4]

Setting aside these broad conclusions, plaintiffs allege only the following facts supposedly connecting this case with events occurring in New York:

---

[4]    The company is engaged in the clinical-stage development of its portfolio of cancer treatments.  It has never generated revenue or rendered services in New York or anywhere else.  (Vogt Decl. ¶ 2.)

1. Plaintiff allege that Raff "laid out $35,000" for due diligence conducted in New York in connection with an agreement with a New York company, "which was negotiated and entered into in New York, and which had a New York forum selection clause" (*Id.* ¶ 15), but plaintiffs do not allege that the agreement is at issue in this case or that it forms the basis of any of their claims.

2. Plaintiffs claim that defendant Singh "acting for and on behalf of" Iovance "conducted multiple meetings with investors introduced to it by [Plaintiffs] in New York" and, despite providing no information regarding any supposed meetings or their relationship to the Court's assertion of personal jurisdiction, conclude that Iovance met with such investors in New York. (*Id.* ¶¶ 16, 17.)

3. Plaintiffs assert that "[a]t least one of the third-parties with whom the parties transacted business with respect to these events has an office in New York and/or is a New York resident" (*Id.* ¶ 18), but plaintiffs do not identify who they are referring to, what "business" was transacted, or how the fact that such third-parties had an office in New York bears any relationship to plaintiffs' claims.

Plaintiffs nevertheless conclude that as a result of the foregoing, Iovance "had purposefully availed itself of the privilege of conducting its activities in New York." (*Id.* ¶ 20.)

The body of the Amended Complaint contains only the two following references to New York: (1) "in or about August of 2012, Sharbat, Raff, and/or SC contacted New World Merchant Partners LLC ("New World"), a New York merchant banking firm for the purpose of assisting them in identifying potential investors for the Lion Bio financing"; and (2) "[o]nce at the helm, Manish continued, like his predecessor, to update Plaintiffs about meetings held with investors, which meetings occurred in the State of New York." (*Id.* ¶¶ 44, 61.)

## III.   THE COURT LACKS PERSONAL JURISDICTION OVER IOVANCE

### A.   Plaintiffs Bear The Burden To Show Jurisdiction

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 604-05 (S.D.N.Y. 2016) (citations omitted). To meet that burden on a motion to dismiss for lack of personal jurisdiction, plaintiffs must make "a *prima facie* showing of jurisdiction through [their] own affidavits and supporting materials." *Virgin Enters. Ltd. v. Virgin Eyes LAC*, No. 08

CV 8564(LAP), 2009 WL 3241529, at *2 (S.D.N.Y. Sept. 30, 2009).  "[T]he Court need not accept as true allegations controverted by the defendant's affidavits, nor need it accept a legal conclusion couched as a factual allegation." *Pablo Star*, 170 F. Supp. 3d at 605 (citations & quotations omitted).

"In deciding a question of personal jurisdiction, district courts must conduct a two-part analysis, looking first to the state's long-arm statute and then analyzing whether jurisdiction comports with federal due process." *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 (2d Cir. 2001).  Plaintiffs cannot establish personal jurisdiction under New York's long-arm statute so it is unnecessary to consider federal due process.

### B.   <u>Plaintiffs Cannot Show General Jurisdiction</u>

Iovance is not subject to general jurisdiction in New York. "[G]eneral jurisdiction is not related to the events giving rise to the suit, and thus, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts' with the forum at the time the initial complaint was filed." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013).  "'[O]nly a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017).  The test for general jurisdiction is whether the non-resident defendant has "affiliations 'so "continuous and systematic" as to render [the defendant] essentially at home in the forum State,' *i.e.*, comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014) (citation omitted).

For a corporate entity, the "paradigm" places where the entity is "at home" for general jurisdiction purposes are (1) its place of incorporation, and (2) its principal place of business. *Id.*

at 137.  "Those affiliations have the virtue of being unique—that is, each ordinarily indicates

only one place—as well as easily ascertainable.  These bases afford plaintiffs recourse to at least

one clear and certain forum in which a corporate defendant may be sued on any and all claims."

*Id.* (citation omitted).  But where neither traditional basis exists, general jurisdiction will arise

only in an "exceptional case."  *Id.* at 139 n.19.

Plaintiffs now concede that "neither party resides in the State of New York."  (AC ¶ 21.)

Iovance is a Delaware corporation with its principal place of business in California.  (Vogt Decl.

¶¶ 4, 8.)  "[W]hen a corporation is neither incorporated nor maintains its principal place of

business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily

unlikely to add up to an 'exceptional case.'"  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619,

629 (2d Cir. 2016).  In an "exceptional case," the defendant's "contacts are so 'continuous and

systematic,' judged against the corporation's national and global activities, that it is 'essentially

at home' in that state."  *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014).

Thus, "a local branch office in the forum" does *not* subject a non-resident defendant to

general jurisdiction there.  *Id.*; *see also Daimler*, 571 U.S. at 138 n.18 (rejecting a claim of

general jurisdiction "based on the presence of a local office"), 139 n.20 ("at home" is not

synonymous with "doing business").  For example, in *Sonera Holding B.V. v. Çukurova Holding

A.S.*, 750 F.3d 221 (2d Cir. 2014), the court held that a foreign company with operations,

properties, and assets predominantly located out of state, was not subject to general jurisdiction

in New York.  *Id.* at 226.  The court reasoned that the company's contacts with New York –

including the use of a New York office and business negotiations with New York-based private

equity funds – "do not come close to making it 'at home' there."  *Id.*  The court stated that "even

a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum." *Id.* at 226.

This is not an exceptional case justifying the assertion of general personal jurisdiction over Iovance even though its home is not in New York. Since 2016, Iovance has maintained an office with only a small number of employees in New York, and since 2018, has maintained only a single employee in its New York office. (Vogt Decl.¶ 10.) This employee represents less than 1% of Iovance's current full-time employee workforce. (*Id.*) Iovance does not conduct sales in New York, does not manufacture treatments in New York, and otherwise does not conduct any activities in New York that would warrant the imposition of general jurisdiction. (*Id.* ¶¶ 2, 10.)

The fact that Iovance's principal place of business was located in New York for approximately fifteen months in 2015 and 2016 does not subject Iovance to general personal jurisdiction. General jurisdiction is measured by examining the defendants' contacts with the forum "at the time the initial complaint was filed." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 674.[5] Plaintiffs do not meet their heavy burden to show general jurisdiction.

### C.    Plaintiffs Cannot Show Specific Jurisdiction

Plaintiffs also do not establish specific jurisdiction. Specific, or claim-related, jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284. In this respect, New York's long-arm statute is more restrictive than the limits of federal due process. *Ehrenfeld v. Mahfouz*, 9 N.Y.3d 501, 512 (2007). Under the

---

[5]    In their response to Iovance's Pre-Motion Letter, plaintiffs argued that Iovance should be subjected to jurisdiction because it admitted in its answer to the case that plaintiffs filed against it in 2016 that "'it has its principal place of business in New York and that jurisdiction and venue in New York are proper.'" (Dkt. 11 (quoting Iovance's Answer and Counterclaims in *Solomon Capital et al. v. Lion Biotechnologies*, N.Y. Supreme Court Index Number 651881/2016, Dkt. #6, ¶ 7).) However, that document was filed on June 3, 2016, before Iovance's relocation to California. Likewise, the fact that Iovance filed a counterclaim in that action does not subject it to jurisdiction in this case. "[A]sserting counterclaims when one has already been sued is hardly the sort of purposeful availment that gives rise to personal jurisdiction." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 541 n.16 (5th Cir. 2019) (citation omitted).

New York statute, specific jurisdiction is proper only if the plaintiff's claim arises from one of four categories of acts: (1) the defendant transacts business in New York or contracts to supply goods or services in New York; (2) the defendant commits a tort in New York; (3) the defendant commits a tort outside New York that injures the plaintiff in New York; or (4) the defendant owns, uses, or possesses real property in New York.  CPLR. § 302(a).

"Coincidental" activities that are unrelated to the cause of action are "too insubstantial" to support long-arm jurisdiction.  *Ehrenfeld*, 9 N.Y.3d at 509 n.6.  There must be a "substantial nexus" or "direct relation" between the conduct under one of those four categories of activities, on the one hand, and the claims made in the cause of action, on the other.  *Merritt v. Airbus Ams., Inc.*, 202 F. Supp. 3d 294, 299 (E.D.N.Y. 2016); *Fontanetta v. Am. Bd. Of Internal Medicine*, 421 F.2d 355, 357 (2d Cir. 1970) (long-arm statute "demand[s] a direct relation between the cause of action and the in-state conduct").

Likewise, federal due process – which must be satisfied in addition to the New York long-arm statute – limits specific jurisdiction to circumstances where "the defendant's suit-related conduct [creates] a substantial connection with the forum State."  *Walden*, 571 U.S. at 284.  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

Plaintiffs must "establish the court's jurisdiction with respect to *each* claim asserted."  *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (emphasis in original; quotations omitted).  To do so, they must make "a prima facie showing of jurisdiction through [their] own affidavits and supporting materials."  *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (quotations omitted).  They "may not rely on conclusory non-fact-

15

specific jurisdictional allegations." *Tannerite Sports, LLC*, 135 F. Supp. 3d at 228; *see, e.g.*, *Virgin Enters.*, 2009 WL 3241529, at *3.

Plaintiffs do not establish specific jurisdiction under any of the four categories of New York's long-arm statute, and so it is not necessary to consider the federal standard.

### 1.   Iovance's Business Activities Do Not Give Rise To Jurisdiction

Plaintiffs do not allege that Iovance "contract[ed] to supply goods or services in New York." CPLR. § 302(a)(1). In such a case, "a court in New York may exercise personal jurisdiction over a non-domiciliary" under § 302(a)(1) only "if (1) defendant 'transacts any business within the state'; and (2) the 'cause of action arises from' that business transaction." *Alibaba Grp. Holdings Ltd. v. Alibabacoin Found.*, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *3 (S.D.N.Y. Apr. 30, 2018). Here, plaintiffs do not establish either element.

### (a)   Iovance Did Not "Transact Business" In New York

"New York courts define 'transacting business' as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (alterations & quotations omitted). "A non-domiciliary defendant transacts business in New York when on his or her own initiative, the non-domiciliary projects himself or herself into this state to engage in a sustained and substantial transaction of business." *ICO Servs., Ltd. v. Coinme, Inc.*, No. 18 Civ. 4276 (LGS), 2018 WL 6605854, at *2 (S.D.N.Y. Dec. 17, 2018).

To determine whether a non-domiciliary defendant "transacted business" in New York, courts consider the following four factors:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New

> York and whether, after executing a contract with a New York business, the
> defendant has visited New York for the purpose of meeting with parties to the
> contract regarding the relationship; (iii) what the choice-of-law clause is in any
> such contract; and (iv) whether the contract requires parties to the contract to send
> notices and payments into the forum state or subjects them to supervision by the
> corporation in the forum state.

*ICO Servs.*, 2018 WL 6605854 (alterations omitted) (quoting *Sunward Elecs., Inc. v. McDonald*,

362 F.3d 17, 22 (2d Cir. 2004)).  Courts assess these factors in the "totality of the

circumstances."  *Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 10 (2d Cir. 2018).

These factors show that Iovance did not transact business in New York for jurisdictional

purposes.  Iovance simply did not project itself into New York in connection with this action.

*First*, plaintiffs do not allege that Iovance has any on-going contractual relationship with

a New York company relating to this action.  There are two alleged contracts at issue in this

case: the Letter Agreement between Iovance and MBA and a supposed agreement "that if

Sharbat, Raff, and/or SC raised $3-5 million" for Iovance "they would be granted an exclusive

license to distribute [Iovance's] cancer treatment methods in Israel," (AC ¶ ¶ 30, 74).[6]

Neither agreement gave rise to an ongoing relationship with a New York company.

MBA is a California limited liability company based in Santa Monica.  (*Id.* ¶ 25; Exh. F to

Glazer Decl. at item 3 & Exh. K to Glazer Decl. at § 4.)  During the period at issue in this

litigation Iovance was a Nevada corporation, and since June 1, 2017 it has been incorporated

under the laws of the state of Delaware.  (Vogt Decl. ¶¶ 3-4.)  At all times relevant to this action

Iovance's principal place of business has been in California.  (*Id* ¶ 5.)  Plaintiffs allege that

Solomon Capital's place of business is located in New York (AC ¶ 5), but this unsubstantiated

allegation cannot control over Sharbat's sworn testimony that Solomon Capital is a "one man

---

[6]    Plaintiffs also allege that Iovance breached an agreement to issue them "1.5 million shares, half to MBA and
half to Sharbat, Raff, and/or SC, as an intended third-party beneficiary who assisted in the provision of
consulting services."  (*Id.* ¶ 90.)  This allegation appears to relate somehow to plaintiffs' claim that they are
entitled to share in consideration promised to MBA.  (*Id.*)

show" with no employees, which he controls from his residence in Israel.  (Exh. N to Glazer

Decl. at 40:19 - 43:21.)  *Tannerite Sports, LLC*, 135 F. Supp. 3d at 228 (when the defendant

offers direct evidence to rebut an unsupported allegation, "the allegation may be deemed

refuted").  Plaintiffs admit that they do not reside in New York.  (AC ¶¶ 2, 3, 22.)

The only "New York Company" even mentioned in the Amended Complaint is New

World Merchant Bank, to which plaintiffs vaguely allege that Raff "laid out $35,000" for due

diligence to help identify potential investors "on [Iovance's] behalf."  (*Id.* ¶¶ 15, 44-48.)

However, even assuming Raff was acting on Iovance's behalf, "[w]hen personal jurisdiction is

asserted under CPLR § 302 by an agent against its principal, the former cannot, for jurisdictional

purposes, attribute its activities in New York to the latter."  *New World Capital Corp. v. Poole*

*Truck Line, Inc.*, 612 F. Supp. 166, 172 (S.D.N.Y. 1985) ("retention of New World, a New York

corporation, as a finder, does not bear on the Court's jurisdiction under CPLR § 302(a)(1)").

In any event, Raff's activities with respect to New World are not at issue in this lawsuit.

While the original version of plaintiffs' complaint in this action sought to enforce an alleged

promise that Raff would receive "shares or promissory notes" in exchange for the funds he

claims to have "laid out" (Exh. A to Glazer Decl. at ¶¶ 38, 101-10), plaintiffs dropped this claim

from the two versions of the complaint they filed thereafter.  (Glazer Decl. ¶¶ 4-5, 10.)  Plaintiffs

are not suing Iovance in this case to recoup fees Raff claims to have advanced to New World, or

with respect to any claim under their relationship with New World.  The fact that they left in

background allegations relating to this claim does not give rise to jurisdiction.  Plaintiffs cannot

subject Iovance to specific jurisdiction in this case based on a claim it is not pursuing.[7]

---

[7]     Plaintiffs *are* pursuing claims against Iovance based on Raff's alleged advancement of funds to New World in
the state court case that has been pending since 2016, when Iovance was headquartered in New York.  (Glazer
Decl. ¶ 18.)  On May 14, 2020, Justice Sherwood of the New York Supreme Court granted Iovance's motion for
partial summary judgment in that case, holding that plaintiffs could not recover more than $47,420 for the

Nor can plaintiffs create jurisdiction on the strength of their conclusory and unsubstantiated allegation that "[a]t least one of the third-parties with whom the parties transacted business with respect to these events has an office in New York and/or is a New York resident."  (AC ¶ 18.)  To carry their burden, plaintiffs must establish that Iovance transacted business in New York, not merely conclude that it did business with a third party who allegedly has an office in New York.  *ICO Servs.,* 2018 WL 6605854, at *5 (allegation that "'New York residents are [defendant's] customers and/or investors . . .' . . . fall[s] far short of the non-conclusory fact-specific allegations or evidence required for Plaintiff to make a prima facie showing of jurisdiction").

Finally, plaintiffs may not establish that Iovance transacted business in New York because it "met with several investors introduced to it by [plaintiffs] in New York."  (AC ¶ 17; *see also id.* ¶¶ 16, 61 (alleging that Singh met with investors in New York).)  Having contact with New York residents is not the same as "transacting business" under § 302(a)(1).  *See, e.g.*, *Berkshire Cap. Grp., LLC v. Palmet Ventures, LLC*, 307 F. App'x 479, 481 (2d Cir. 2008) ("The mere fact that it engaged in *some* contact with a New York purchaser does not mean that [defendant] transacted business in New York.") (emphasis in original); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (communications and payments to New York investment broker "were incidental consequences of fulfilling a foreign contract and . . . insufficient to 'project' the Foreign Defendants into New York").

Specifically, having meetings in New York does not constitute transacting business under § 302(a)(1).  *Biz2Credit, Inc. v. Kular*, No. 14 Civ. 8223(ER), 2015 WL 2445076, at *6 (S.D.N.Y. May 21, 2015) ("Meetings that do not result in the execution of a contract or are not essential to or do not substantially advance the business relationship rarely provide the basis for

_____

shares they were seeking, plus the amount of their investments (including interest).  (*Id.* at ¶ 19 & Exh. M.)

19

jurisdiction pursuant to Section 302(a)(1).");  *Anderson v. Indiana Black Expo, Inc.*, 81 F. Supp.

2d 494, 502 (S.D.N.Y. 2000) ("[P]hysical presence alone cannot talismanically transform any

and all business dealings into business transactions under CPLR 302.") (quotations omitted).

       *Second*, plaintiffs do not allege that Iovance negotiated its alleged agreements with them

in New York.  "New York courts place special emphasis on the locale of contract negotiations

when analyzing contracting activity for § 302(a)(1) purposes."  *Schentag v. Nebgen*, No. 1:17-

cv-8734-GHW, 2018 WL 3104092, at *18 (S.D.N.Y. Jun. 21, 2018) (quotations omitted).

Generally, where the subject matter of the litigation is a contract between the parties, "it is only

the locale and nature of defendants' negotiations regarding the [contract] that must be examined

when considering whether to exercise jurisdiction over defendants under Section 302."

*Cambridge Energy Corp. v. Tri-Co Fuels, Inc.*, 637 F. Supp. 1210, 1212 (S.D.N.Y. 1986).  It is

undisputed that Iovance did not negotiate with plaintiffs in New York, so this factor weighs

heavily in favor of granting the motion.

       Instead of identifying anything Iovance did to negotiate any agreement with them in New

York, plaintiffs offer the cryptic conclusion that "the agreement(s) governing various aspects of

this case, which were entered into during the transpiration of the events herein alleged, whether

written, oral, or those to be enforced as a matter of law as quasi contracts, were negotiated and/or

entered into within the State of New York."  (AC ¶ 13.)  This falls far short.

       In *Cambridge Energy*, a New York company sued a Kentucky coal company for breach

of an agency agreement under which the New York company was to act as "energy broker" to

assist in procuring a coal purchase agreement from a third party based in New York.  *Id.* at 1211.

The court dismissed the action because "there [was] no substantiated or particularized allegation

that negotiations regarding the agency contract took place in New York."  *Id.* at 1213.  While

(unlike here) the parties in that case did meet in New York, such meetings did not establish jurisdiction because "with regard to the agency contract with plaintiffs, absolutely nothing of substance was ever discussed while these defendants were in New York." *Id.* at 1212.

In this case, as discussed above, plaintiffs are suing Iovance to enforce the Letter Agreement and an alleged Israeli license agreement. As in *Cambridge Energy*, plaintiffs offer "no substantiated or particularized allegation" that either plaintiffs or Iovance undertook any negotiations relating to either agreement in New York. And unlike the *Cambridge Energy* defendants, who met with the plaintiffs in New York and called and wrote to them in New York to negotiate the agreement at issue, Iovance is not alleged to have had any contact with plaintiffs when either side was in New York. Indeed, plaintiffs do not allege that they did *anything* in New York related to this action. New York is not the locale of the parties' contract negotiations.

**Third**, the Letter Agreement contains a California choice-of-law clause. (Exh. G to Glazer Decl. at § 9.4.) "[A] choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of the agreed-upon state's law." *Schentag*, 2018 WL 3104092, at *20 (quotations & alterations omitted) (Delaware choice-of-law clause "weighs against jurisdiction in New York"); *accord Giuliano v. Barch*, No. 16 CV 0859 (NSR), 2017 WL 1234042, at *9 (S.D.N.Y. Mar. 31, 2017) ("significant factor" that "the Agreements are governed by Maryland law"). Here, plaintiffs concede that "[p]ursuant to the agreements between the parties . . . the claims in this action are to be governed and the agreements construed under the laws of the State of California." (AC ¶ 12.)

**Fourth**, the agreements at issue do not require the parties to send notices or payments into New York, nor do they subject any party to supervision in New York. Plaintiffs do not

allege otherwise, and in fact the Letter Agreement requires that notices be sent to addresses in California.  (Exh. G to Glazer Decl. at p. 1 & § 9.1.)

All four factors courts examine to evaluate personal jurisdiction point to the conclusion that Iovance did not transact business related to this action in New York under § 302(a)(1).

(b)     None Of Plaintiffs' Claims "Arise From" Iovance's New York Contacts

Even if plaintiffs had alleged a substantial and particularized business transaction in New York, "there must be a strong nexus between the plaintiff's cause of action and the defendant's in state conduct."  *Snyder v. Ply Gem Indus., Inc.*, 200 F. Supp. 2d 246, 249 (S.D.N.Y. 2001) (quotations omitted).  "[A] connection that is 'merely coincidental' is insufficient to support jurisdiction."  *Weisberg v. Smith*, 473 F. Supp. 2d 604, 606 (S.D.N.Y. 2007) (that defendant "opened an office and conducted the challenged transactions" in New York "create[d] a merely coincidental connection between this action and New York").

None of Iovance's alleged New York contacts have a substantial nexus to plaintiffs' claims.  As discussed above, the fact that Raff paid money to New World to conduct due diligence and identify potential investors (AC ¶¶ 15, 44-48) is irrelevant, especially since plaintiffs are not suing Iovance in this case to recover the fees Raff paid.  Rather, plaintiffs allege that Iovance breached the Letter Agreement with MBA and a purported Israeli licensing agreement.  There is no connection between New World and plaintiffs' claims.

Likewise, the vague and conclusory allegation that Iovance met with investors in New York falls far short of the "strong nexus" with New York required to assert jurisdiction.  (*Id.* ¶¶ 16, 17, 61.)  Plaintiffs do not allege what transpired at these supposed meetings, when or where they occurred, or even who the supposed investors were.  *See, e.g.*, *Air Innovations Inc. v. Barker Co.*, No. 5:08-CV-1305 (GTS/GHL), 2010 WL 11494032, at *7 (S.D.N.Y. Jun. 17, 2010)

("N.Y. C.P.L.R. § 302(a) does not authorize a court to force an out-of-state defendant to litigate in New York based on a plaintiff's unsupported claim that the defendant's business in the state relates to the action before the Court.").  It is clear that plaintiffs' claims do not arise out of these meetings, but rather out of alleged agreements between residents of California and Israel.

Finally, plaintiffs' allegation that "[a]t least one of the third-parties with whom the parties transacted business with respect to these events has an office in New York and/or is a New York resident" (*Id.* ¶ 18) does not demonstrate a strong connection between Iovance's New York conduct and plaintiffs' claims.  This conclusory allegation is made without any support and fails to show that Iovance projected itself into New York in a way that has a substantial nexus to plaintiffs' claims.[8]  Even if Iovance entered into a contract with some New York resident,"[t]he bare fact that [the defendant] contracted with a [forum resident] is not enough to establish personal jurisdiction in the State."  *Bristol-Myers Squibb*, 137 S. Ct. at 1783.

Plaintiffs' claims do not "arise from" Iovance's alleged activities in New York as required to exercise jurisdiction under § 302(a)(1).

### 2.      Iovance Did Not Commit A Tort In New York

Plaintiffs cannot establish long-arm jurisdiction on the basis that Iovance committed a tort in New York.  *See* CPLR § 302(a)(2).  Plaintiffs do not assert that Iovance committed a tort anywhere, much less in New York.  Their claims against Iovance are for alleged breach of contract, unjust enrichment and contractual indemnification.  (AC ¶¶ 63-94, 106-110.)

In any event, "[s]ection 302(a)(2) has been narrowly construed to apply only when the defendant was actually physically present in New York when he performed the allegedly tortious act."  *Aaron Consulting Co. v. Snap Sols. LLC*, No. 16-CV-6775 (NGG), 2018 WL 4568800, at

---

[8]      Indeed, if the third-party alluded to as a "one of the third-parties with whom the parties transacted business with respect to these events" who "has an office in New York and/or is a New York resident" is New World Merchant Bank, the alleged business transaction does not pertain to any claim of plaintiffs in this case.

*6 (E.D.N.Y. Sept. 24, 2018); *Panacea Solutions, Inc. v. Roll*, No. 05 Civ. 10089(RCC), 2006 WL 3096022, at *4 (S.D.N.Y. Oct. 31, 2006) ("Because Panacea has not alleged that Defendants were physically present in New York when committing any alleged trademark infringement, it has not established a prima facie showing of jurisdiction under § 302(a)(2).").

The only thing Iovance allegedly did in New York was meet with investors.  (AC ¶¶ 16-17, 61.)  Plaintiffs do not allege that Iovance committed a tort during any of these meetings.

### 3.      There Is No Jurisdiction Based On Alleged Out-Of-State Torts

Plaintiffs cannot establish jurisdiction on the basis that Iovance committed a tort outside of New York.  *See* CPLR § 302(a)(3).  Again, Iovance is not alleged to have committed a tort anywhere.  *Anderson*, 81 F. Supp. 2d at 504 ("In this action [plaintiff] does not assert any tort claims, and those claims that could be generously construed as such are either repackaged breach-of-contract claims or claims not involving acts taken by the named defendants.").

Further, there must be a jurisdictional injury "within the state" of New York.  *Id.*  Under § 302(a)(3), courts "apply a situs-of-injury test, where the situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff."  *Timothy Coffey Nursery Landscape Inc. v. Soave*, 760 F. App'x 58, 61 (2d Cir. 2019) (quotations omitted).  "The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York."  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001).

Plaintiffs did not suffer a jurisdictional injury "within the state" of New York.  Plaintiffs were located in Israel.  (AC ¶¶ 2-3; Exh. N to Glazer Decl. at 40:19 - 43:21.)  And if plaintiffs

experienced some financial consequences in New York (which they do not allege), the suffering of economic damages in New York is irrelevant.  The Court lacks jurisdiction under § 302(a)(3).

### 4.      There Is No Jurisdiction Based On Real Property

Plaintiffs do not attempt to establish long-arm jurisdiction on the ground that Iovance "owns, uses or possesses any real property situated within the state."  CPLR §302(a)(4).  Nor could they.  This case does not relate to the ownership, possession or use of real property.

## IV.    CONCLUSION

Plaintiffs' vague and conclusory jurisdictional allegations only underscore that this case does not arise out of anything that Iovance did in New York.  This is a dispute between out-of-state residents concerning out-of-state agreements.  Iovance respectfully requests that the Court dismiss the action for lack of personal jurisdiction.

Dated: May 22, 2020                         TROYGOULD PC

                                            By:  ___/s/ Russell I. Glazer___
                                            Russell I. Glazer, Esq. (*pro hac vice*)
                                            Benjamin W. Clements, Esq. (*pro hac vice*)
                                            1801 Century Park East, Ste. 1600
                                            Los Angeles, CA  90067
                                            Telephone:  (310) 789-1216
                                            Facsimile:  (310) 789-1416
                                            Email:  rglazer@troygould.com
                                                      bclements@troygould.com

                                            *Attorneys for Defendant*
                                            *Iovance Biotherapeutics, Inc.*

25