UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOLOMON SHARBAT, SOLOMON CAPITAL
LLC, SOLOMON CAPITAL 401k TRUST, and
SHELHAV RAFF,

                Plaintiffs,

                v.

IOVANCE BIOTHERAPEUTICS, INC., f/k/a
LION BIOTECHNOLOGIES INC., f/k/a GENESIS
BIOPHARMA INC., and MANISH SINGH,

                Defendants.

**OPINION AND ORDER**

20 Civ. 1391 (ER)

Ramos, D.J.:

      Plaintiffs Solomon Sharbat, Solomon Capital LLC, Solomon Capital 401k Trust, and Shelhav Raff bring this suit against Iovance Biotherapeutics ("Iovance"), formerly Lion Biotechnologies Inc. and Genesis Biopharma, Inc., and Manish Singh ("Singh") for breach of contract and related claims. Pending before this Court are Iovance and Singh's motions to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons set forth below, both motions are **DENIED**.

**I.    Factual Background and Procedural History**

      Sharbat and Raff are Israeli citizens. Doc. 15 at ¶¶ 1-2. Sharbat is trustee of Solomon Capital 401k Trust (the "Trust"), a qualified retirement trust organized under New York law. The Trust's principal place of business is New York, New York. *Id.* at ¶ 5. Solomon Capital LLC ("Solomon Capital") is a New York corporation with its principal place of business in Forest Hills, New York. *Id.* at ¶ 4. Plaintiffs assist and consult with clients on fundraising, mergers, strategic alliances, and facilitate introductions to effect those ends. Doc. 15 at ¶ 23.

Iovance is a corporation organized under the laws of the State of Nevada and existing pursuant to the laws of the State of Delaware, with its principal place of business in New York, New York. *Id.* at ¶ 6. Upon information and belief, Iovance is the successor in interest to Lion Biotechnologies, Inc. ("Lion Bio"), a biotechnology company that develops cancer immunotherapies that eventually merged with Genesis Biopharma Inc. ("Genesis"). *Id.* at ¶¶ 7, 24. At times relevant to the complaint, Singh, a resident of California, succeeded Anthony Cataldo as the chief executive officer ("CEO") of Lion Bio. Doc. 15 at ¶¶ 9, 24. Singh served as CEO from July 24, 2013 to December 31, 2014. Doc. 23 at ¶ 7.

In approximately the summer of 2012, Sharbat and Raff were introduced to Lion Bio's leadership through MBA Holdings, LLC ("MBA"), a California-based consulting firm. Doc. 23 at ¶¶ 25-26. MBA informed Sharbat and Raff that Plaintiffs could earn substantial fees assisting Lion Bio in securing the $30 million it needed to expand and develop its intellectual property by merging with Genesis. *Id.* at ¶ 28. On June 15, 2012, Lion Bio and MBA entered an agreement through which MBA agreed to source financing and other strategic relationships for Genesis (the "Letter Agreement"). *Id.* at ¶ 30. Pursuant to the Letter Agreement, Plaintiffs would earn 20% of any financing from a qualified investor. *Id.* at ¶ 32. Sharbat, Raff, and MBA would each be entitled to 33% of the finder's fee contingent on qualified introductions—Plaintiffs introducing persons or companies to Lion Bio. *Id.* at ¶ 33. In the alternative, Sharbat was entitled to a $400,000 secured note payable on demand. *Id.* at ¶ 34.

In approximately August of 2012, Plaintiffs asked New World Merchant Partners ("New World"), a New York-based company, for assistance procuring investors for Lion Bio's financing. *Id.* at ¶ 44. On August 28, 2012, New World agreed to do due diligence for, and evaluate the growth of, Genesis in New York, subject to an agreement with a forum selection

clause in New York. *Id.* at ¶¶ 15, 45. Raff paid a $35,000 due diligence fee to New World on behalf of Lion Bio with the understanding that he would receive in return (1) a $35,000 promissory note, (2) 17,500 common shares of Genesis stock, and (3) the right to convert the note in Genesis' next financing. *Id.* at ¶¶ 47-48.

From approximately 2012 until 2014, Plaintiffs made several qualified introductions to Lion Bio resulting in $70.3 million in financing. *Id.* at ¶¶ 52-56. When Singh became CEO, he met with several of the investors Plaintiffs had introduced to Lion Bio, at least one third of which had either an office in New York or resided in New York. *Id.* at ¶¶ 17-18. Plaintiffs allege that Singh subsequently misrepresented the amounts he expected to raise from Plaintiffs' qualified introductions and omitted material facts regarding investments made by Plaintiffs' qualified introductions. *Id.* at ¶¶ 66-67. For example, Singh tried to limit the fees due to Plaintiffs as a result of the introduction to Highline Research Advisors, LLC ("Highline"), which had facilitated Lion Bio's merger with Genesis. *Id.* at ¶¶ 56-57, 65. Lion Bio received $13.5 million, which is now valued at $35 million, entitling Plaintiffs to 86,000 shares of Genesis stock or $24.5 million. *Id.* at ¶ 57.

In emails as of October 14, 2013, Singh stated that it was still too early to determine the value of the company and that the final valuation should only be made the day before closing the deal. He further stated that the expected price per share would be in the range of $4-$5. *Id.* at ¶ 69. Approximately two weeks later, a deal for shares at a price of $2 per share plus a free warrant at $2.50, was published. *Id.* at ¶ 70. Singh received 608,000 shares of stock which were valued at approximately six million dollars. *Id.* at ¶ 72. Upon information and belief, these were shares that should have been offered to Sharbat, Raff, and/or SC and were their rightful property. Today those shares would have a value in excess of $16 million. *Id.* Finally, Plaintiffs were

also given the exclusive license to distribute Lion Bio's cancer technologies in Israel, which is valued at $30-50 million. *Id.* at ¶ 74.

Over five years later, on September 27, 2019, Plaintiffs filed the initial complaint raising claims for breach of contract, unjust enrichment, fraud, conversion, and indemnification in the Supreme Court of the State of New York, *Sharbat et al. v. Iovance Biotherapeutics, Inc. et al.*, Index No. 655668/2019 ("State Action"). Doc. 1-1. On February 18, 2020, Iovance removed the case to this court. Doc. 1. On May 1, 2020, Plaintiffs filed the first amended complaint ("FAC"). Doc. 15.

In the FAC, Plaintiffs allege that this Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 301 because Defendants (1) resided in New York at the time of the alleged transactions giving rise to the case, (2) continuously and systematically do business in New York, and (3) have availed themselves of courts in New York. *Id.* at ¶ 10. Plaintiffs further allege that this Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302(a)(1) because the transactions giving rise to this case occurred in New York. *Id.* at ¶ 11. In addition, Plaintiffs allege that this Court has personal jurisdiction over the Defendants pursuant to N.Y. C.P.L.R. § 302(a)(2) because Defendants committed many, if not all, of the tortious and unlawful acts at issue in this case in New York. *Id.* at ¶ 12. Finally, Plaintiffs allege that this Court has jurisdiction over the Defendants pursuant to N.Y. C.P.L.R. § 302(a)(3) because Defendants caused injury to persons in New York, and, upon information and belief, regularly do business in New York, engage in a persistent course of conduct in New York, and derive substantial revenue from services rendered in New York. *Id.* at ¶ 19.

On May 22, 2020, Iovance moved to dismiss the FAC for lack of personal jurisdiction. Doc. 18. Two attorney declarations accompanied Iovance's motion. The declaration of Russell

I. Glazer attached deposition testimony from Sharbat and Raff that they are Israeli citizens, and that both Solomon Capital and the Trust consist solely of Sharbat and are run by him from Israel. Doc. 18-2 at ¶¶ 20-22.  The declaration of Frederick G. Vogt explains that neither Iovance nor its successor entities were incorporated under New York law, and that Iovance did not operate its principal place of business in New York during the time period giving rise to Plaintiffs' claims. Doc. 18-19 at ¶¶ 3-4, 9.

According to Defendants, prior to September 2013, Genesis was organized under Nevada law.  Doc. 18-19 at ¶ 3.  On September 25, 2013, Genesis amended and restated its articles of incorporation, changing its name to Lion Bio.  *Id.*  On June 1, 2017, Lion Bio reincorporated under Delaware law.  *Id.* at ¶ 4.  On June 27, 2017, Lion Bio changed its name to Iovance.  *Id.* Until July 2015, Iovance's principal place of business was California.  *Id.* at ¶ 5.  From July 2015 until October 2016, Iovance's principal place of business was in New York.  *Id.* at ¶ 6.  In October 2016, Iovance moved its principal place of business back to California.  *Id.* at ¶ 7. Although Iovance has maintained a small office with one employee in New York since October 2016, Iovance does not conduct sales, manufacturing, or research in New York.  *Id.* at ¶ 10.

On June 19, 2020, Singh filed his own motion to dismiss the FAC for lack of personal jurisdiction.  Doc. 21.  In the accompanying declaration, Singh attests that he has continuously lived in California since 1997.  Doc. 23 at ¶ 2.  Singh has never lived in or owned real property in New York.  *Id.* at ¶ 3.  Nor does he have a driver's license, file tax returns, or maintain an address or telephone number in New York.  *Id.* at ¶¶ 4-6.  While he was the CEO of the company now known as Iovance from July 24, 2013 until December 3, 2014, he worked in California and did not maintain a New York office.  *Id.* at ¶ 7.  To the best of Singh's recollection, he never met or communicated with Sharbat or Raff in New York.  *Id.* at ¶ 8.  He met with Sharbat in person

5

once in Israel in approximately December 2013, and otherwise communicated with Sharbat by email or telephone. *Id.* at ¶ 9. He never met Raff. *Id.* According to Singh, Iovance did not generate revenue while he was CEO. *Id.* at ¶ 10.

On July 17, 2020, Plaintiffs opposed Defendants' motions. Doc. 26. Sharbat submitted his own declaration, asserting that Plaintiff's compensation agreements were negotiated by Iovance's counsel at Baratta, Baratta & Aidala, LLP located in New York. Doc. 25 at ¶ 6. Sharbat further attests that several of the investors that he and Raff introduced to Iovance were located in New York, including Broadfin Healthcare Fund LP ("Broadfin"), Perceptive Advisors LLC ("Perceptive Advisors"), Quogue Capital ("Quogue"), Iroquois Capital Management ("Iroquois"), and that any negotiations with them occurred in New York. Doc. 26 at ¶¶ 4, 7-14, 44. Upon information and belief, Roth Capital LLC ("Roth"), which is located in New York, was Iovance's lead placement agent, and Singh traveled to New York to engage Roth. *Id.* at ¶ 19. New World's agreement with Iovance also provided for New York venue and choice of law. *Id.* at ¶ 25. Highline is also based in New York and, upon information and belief, Singh traveled to New York to meet potential investors through Highline. *Id.* at ¶¶ 40, 42-43. Cataldo, Singh's predecessor, also traveled to New York twice to meet with Iroquois and Pfizer. *Id.* at ¶¶ 44, 46.

## II.     Legal Standard

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). To meet this burden where there has been no discovery or evidentiary hearing, the plaintiff must plead facts sufficient for a *prima*

*facie* showing of jurisdiction. *Id*. As the Court evaluates a Rule 12(b)(2) motion, it must construe all of the plaintiff's allegations as true and resolve all doubts in his favor. *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC. v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)). As 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials when ruling on such motions. *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *accord Darby Trading Inc. v. Shell Int'l Trading and Shipping Co.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

**III. Discussion**

Courts evaluating personal jurisdiction over out-of-state defendants take a two-step approach: *first*, the Court must determine if jurisdiction exists under the law of the forum state; *second*, if so, the Court must then evaluate whether the exercise of personal jurisdiction comports with Due Process under the United States Constitution. *Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 573 (2d Cir. 2020) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).

In the FAC, Plaintiffs allege that Defendants are subject to personal jurisdiction in New York under the theories of general and specific jurisdiction. Doc. 15 at ¶¶ 10-20. General jurisdiction is known as "all-purpose" jurisdiction and "permits a court to hear 'any and all

claims' against an entity." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015 ) (citing *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014). By contrast, specific jurisdiction "permits adjudicatory authority only over issues that aris[e] out of or relat[e] to the [entity's] contacts with the forum." *Thackurdeen*, 130 F. Supp. 3d at 798 (citing *Gucci Am.,* 768 F.3d at 134). The Court will address each type of personal jurisdiction in turn.

### A. General Jurisdiction

In New York, general jurisdiction is governed by N.Y. C.P.L.R. § 301. *Thackurdeen*, 130 F. Supp. 3d at 798. Section 301 provides that "a court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Pursuant to § 301, "a court sitting in New York has general personal jurisdiction over a defendant company that has 'engaged in such a continuous and systematic course of doing business [in New York] that a finding of its presence in [New York] is warranted. *Yih,* 815 F. App'x at 573 (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 77 N.Y.2d 28, 33 (N.Y. 1990). Both Iovance and Singh allege that there is no general jurisdiction here. Doc. 18 at ¶ 6. The Court agrees.

#### i. Iovance

The Court does not have general jurisdiction over Iovance because even if § 301 applied, the exercise of general jurisdiction over Iovance would not comport with Due Process. *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 141 (S.D.N.Y. Sept. 7, 2018) (assuming § 301 applies, but denying general jurisdiction because allegations were not sufficient under due process analysis). "For a corporation, general jurisdiction is typically available only in the forum in which it is incorporated as well as the forum in which its principal place of business is located." *Hitachi*, 331 F. Supp. 3d at 141. Doing business in a state, even if the defendant's course of conduct is "'substantial, continuous, and systematic[,]'" may not be

enough to subject the corporation to general jurisdiction in the forum state. *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014)). "Only in an 'exceptional case' does a corporation have 'operations in a forum other than its formal place of incorporation or principal place of business' that are 'so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 571 U.S. 117, 139 n.9).

Here, Iovance is incorporated in Delaware with its principal place of business in California. Doc. 18-19 at ¶¶ 4-5. Although Iovance has operated a single-employee office in New York since October 2016, maintaining a satellite office in New York is insufficient to provide general jurisdiction comporting with due process. *Id.* at ¶ 6; *Hitachi*, 331 F. Supp. 3d at 141-42 (collecting cases).

The Second Circuit's decision in *Sonera Holding B.V. v. Çukurova Holding A.Ş.*, is instructive. 750 F.3d 221 (2d Cir. 2014). In *Sonera*, a Turkish defendant's office in New York, negotiations with New York-based equity funds, sales of stock on the New York Stock Exchange, and other connections to the United States failed to render it at home in New York for purposes of general jurisdiction. *Id.* at 226. The same is true here. That Iovance was introduced to investors based in New York, used its lawyers located in New York to negotiate Plaintiffs' compensation agreements, had a lead placement agent located in New York, and its CEOs traveled to New York to meet with Highline, Iroquois, and other investors introduced by Plaintiffs, does not render this the "exceptional case" for purposes of general jurisdiction outside of Delaware or California. *Hitachi*, 331 F. Supp. 3d at 141-42 (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016)).

Accordingly, the Court does not have general jurisdiction over Iovance.

### ii. Singh

As a California resident and individual defendant, this Court does not have general jurisdiction over Singh. "The paradigm forum for general jurisdiction over an individual is the individual's domicile, his home." *Sonera Holding*, 750 F.3d at 225. "One may have more than one residence in different parts of this country or the world, but a person may have only one domicile." *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017). "Domicile is the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).

Singh's domicile is in California, not New York. Singh has been a resident of California continuously since 1997. Doc. 22 at ¶ 2. He neither resides in New York nor owns real property here, nor does he intend to do so. *Id.* at ¶ 3. Nor does he hold a New York driver's license, file New York State tax returns, or maintain a telephone listing or mailing address in New York. *Id.* at ¶¶ 4-6. Therefore, there is no general jurisdiction based on domicile.

Moreover, "[a]n individual defendant cannot be subject to jurisdiction under CPLR § 301 unless he is doing business in New York as an individual rather than on behalf of a corporation." *Broumand v. Joseph*, --- F. Supp. 3d ---, 2021 WL 771387, at *3 (S.D.N.Y. Feb. 27, 2021) (citation omitted). In *Broumand v. Joseph*, Judge Rakoff found no general jurisdiction over defendants whose "ties to New York ar[o]se out of their roles in the underlying facts and circumstances and their involvement with New York entities who are parties to" the case. *Id.* Likewise, any purported contacts with New York through Singh's position at Lion Bio cannot support general jurisdiction over Singh.

10

In short, Singh is not "at home" in New York and the Court therefore does not have general jurisdiction over Singh.

### B. Specific Jurisdiction

Having found no general jurisdiction over either Defendant, the Court considers whether it has specific jurisdiction over Iovance of Singh under New York's long-arm statute, N.Y. C.P.L.R. § 302.  Although Plaintiffs assert personal jurisdiction pursuant to three provisions of § 302, because the Court ultimately finds jurisdiction under § 302(a)(1), the Court need not address the alternate bases alleged for personal jurisdiction pursuant to §§ 302(a)(2)-(3).  *See, e.g.*, *Pearson Educ., Inc. v. ABC Books, LLC*, No. 19 Civ. 7642 (RA), 2020 WL 3547217, at *6 (S.D.N.Y. June 30, 2020) ("Because the Court concludes that personal jurisdiction is proper under § 302(a)(1), it need not determine whether it would also be proper under § 302(a)(3).").

Section 302(a)(1) provides "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state[.]"  To determine whether there is a basis for personal jurisdiction under § 302(a)(1), courts evaluate "the totality of the defendant's activity within the forum" and whether "there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citations omitted).  "An articulable nexus or substantial relationship exists 'where at least one element [of the claim] arises from the New York contacts' rather than 'every element of [the] cause of action pleaded.'" *D & R Global Solutions*, quoting 20 N.Y.3d at 339, 960 N.Y.S.2d at 702.

The Court will address the application of the long-arm statute to each Defendant in turn.

11

### i.    Iovance

The Court has specific jurisdiction over Iovance under § 302(a)(1).  The Second Circuit has found the following factors relevant to whether an out-of-state defendant has transacted business in the forum state:

> (1) whether the defendant has an ongoing contractual relationship with a New York corporation;
> (2) whether the contract was negotiated or executed in New York and whether the defendant visited New York to meet with the parties after the contract was executed;
> (3) whether there is a choice-of-law clause in the contract; and
> (4) whether the contract requires the defendant to send notices and payments into the forum state.

*Broumand*, 2021 WL 771387, at *3-4 (citing *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)).

In *D&R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro*, the New York Court of Appeals found New York's long-arm statute applied to the defendant, a Spanish corporation, who had contracted with plaintiff, another Spanish corporation, for introductions to distributors in the United States.  29 N.Y.3d 292, 298 (N.Y. 2017).  The plaintiff had introduced defendant to a New York distributor, defendant had then entered a contract with that distributor and travelled to New York to promote its products through the distributor "at least twice."  *Id.*  These contacts evidenced "that defendant purposefully availed itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws."  *Id.* (citation omitted).  The *D&R* Court also found that, because plaintiff alleged that it had been denied the requisite fees for this introduction, there was a substantial nexus between plaintiff's claims and defendant's contacts with New York.  *Id.* at 299.

Here, similarly, Iovance entered several contractual relationships with corporations located in New York which form the basis of this lawsuit, including those with Highline,

12

Broadfin, Perceptive Advisers, Quogue, Iroquois, New World and Roth; the New World Agreement even had New York choice of law and forum selection clauses. Doc. 25 at ¶¶ 42-43. Moreover, Singh held meetings with potential investors who were introduced to Defendants by Plaintiffs in New York, and accepted investments from those investors. Singh also travelled to New York to enter an agreement with Iovance's lead placement agent, Roth. Doc. 25 at ¶ 19. Moreover, Plaintiffs' claims arise from Iovance's contacts with New York, as Plaintiffs allege that they were not paid sufficient fees for these introductions.

Plaintiffs have thus adequately alleged personal jurisdiction under New York's long-arm statute for Iovance, provided it comports with Due Process. *See infra* Part III.C.

### ii.     Singh

The Court also has specific jurisdiction over Singh pursuant to § 302(a)(1). An individual officer of a corporation may be subject to specific jurisdiction if they were acting as an agent of the Company. *Duravest, Inc. v. Viscardi, A.G.*, 581F. Supp. 2d 628, 634 (S.D.N.Y. 2008). "[F]or a corporation to be considered an agent of an officer for personal jurisdiction purposes, a plaintiff must allege: (1) that the corporation engaged in purposeful activities in New York in relation to the transaction; (2) that the corporation's activities were performed for the benefit of the individual defendant; (3) that the corporation's activities were performed with the knowledge and consent of the individual defendant; and (4) that the individual defendant exercised some control over the corporation." *Id.* (citation omitted).

Singh was the CEO of Iovance and, upon information and belief, travelled to New York at least twice: once to meet with investors through Highline, and another time to finalize Iovance's agreement with Roth, its lead placement agent. Doc. 25 at ¶¶ 19, 42-43. Highline had been introduced to Defendants by Plaintiffs, and aided Lion Bio in its merger with Genesis.

Doc. 15 at ¶¶ 56-57.  Plaintiffs' fraud and conversion claims against Singh are rooted in his alleged attempts to limit the fees Plaintiffs could collect from qualified introductions, including their introduction to Highline, and the fees to be collected from Lion Bio's merger with Genesis. *Id.* at ¶¶ 65, 57.  There is thus a "substantial relationship" between Singh's activity in New York, and the claims against him.  "Proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Broumand*, 2021 WL 771387, at *3.  Accordingly, exercise of specific jurisdiction over Singh is appropriate under § 302(a)(1) provided it comports with Due Process.

      **C.**     **Due Process**

Having found that the Plaintiffs have sufficiently established personal jurisdiction over both Defendants under § 302(a)(1), the Court turns to whether the exercise of personal jurisdiction in this case comports with Due Process.  Initially, the Court recognizes that "it would be a 'rare' case where New York C.P.L.R. § 302(a)(1) was satisfied by a defendant's transaction of business but the assertion of specific jurisdiction arising out of the transaction nonetheless violated due process."  *Nat'l Hockey League v. Hockey Cup LLC*, No. 18 Civ. 6597 (DC), 2019 WL 130576, at *6 (S.D.N.Y. Jan. 8, 2019) (citing *Licci*, 732 F.3d at 170).  The Due Process inquiry requires analyzing whether the defendant has sufficient minimum contacts with the forum state to establish personal jurisdiction and whether exercising personal jurisdiction would be reasonable given the circumstances of this case.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164-65 (2d Cir. 2010).  As with New York's long-arm statute, these minimum contacts must be related to Plaintiff's claims.  *Id.* at 166 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ("When a controversy is related to or arises out

of a defendant's contacts with the forum, the Court has said that a relationship among the defendant, the forum, and the litigation is the essential foundation of in personam jurisdiction.") (citation omitted)).  Reasonableness is then assessed using five factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant;
> (2) the interests of the forum state in adjudicating the case;
> (3) the plaintiff's interest in obtaining convenient and effective relief;
> (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and
> (5) the shared interest of the states in furthering substantive social policies.

*Id.* at 164 (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)).

Here, the Plaintiffs have asserted that Defendants have sufficient minimum contacts to satisfy Due Process for the same reasons that there is personal jurisdiction under § 302(a)(1). Singh travelled to New York to meet with investors and in particular, Highline, who was introduced to Defendants by Plaintiffs.  Singh also travelled to New York to execute a contract with Roth, who acted as lead placement agent for Iovance in raising capital.  Plaintiffs' claims against Singh for fraud and conversion arise from his alleged attempts to limit the fees Plaintiffs could collect from their qualified introductions, including of Highline, and Lion Bio's merger with Genesis.  Doc. 15 at ¶¶ 65, 57.  Iovance entered contracts with several investors introduced to them by Plaintiffs who were based in New York, and in particular with New World and Roth, who facilitated those deals, in New York.  These contacts are substantially, in fact directly, related to the claims asserted herein.  Doc. 15 at ¶ 3; *Chen Lin v. Dolar Shop Rest. Group, LLC*, No. 16 Civ. 2474 (RPK) (RML), 2021 WL 681075, at *5-6 (E.D.N.Y. Feb. 22, 2021) (finding contacts sufficient for Due Process where defendant had entered an agreement concerning the operation of a business in New York).

Once minimum contacts are shown, "the exercise of jurisdiction is favored" unless defendants present "a compelling case that the presence of some other considerations would

render jurisdiction unreasonable." *Smart Study Co., Ltd. v. A Pleasant Trip Store*, No. 20 Civ. 1733 (MKV), 2020 WL 2227016, at *3 (S.D.N.Y. May 7, 2020) (citing *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).  Here, the Defendants raise no arguments on the reasonableness factors in their motion so "[t]he Court will not endeavor to find additional hardships on the Defendant[s] where they have not otherwise brought them forward; the Plaintiff's election of forum in this case is dispositive." *Id.* at *4; *see also Pearson Educ., Inc.*, 2020 WL 3547217, at *9 (approving exercise of personal jurisdiction where "[defendant] has not offered *any* argument that other considerations would render jurisdiction unreasonable here.") (emphasis in original and citations omitted).

Because the exercise of personal jurisdiction over the Defendants complies with New York's long-arm statute and comports with Due Process, their motion to dismiss the complaint for lack of personal jurisdiction is denied.

**IV.    Conclusion**

In sum, Defendants' motions to dismiss for lack of personal jurisdiction are **DENIED**. The parties are directed to appear telephonically for a status conference on **April 23, 2021 at 10:30 a.m.** using the following conference call information:  (877) 411-9748; 3029857#.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 18 and 21.

SO ORDERED.

Dated:    March 26, 2021
            New York, New York

_____
EDGARDO RAMOS, U.S.D.J.