UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOLOMON SHARBAT, SOLOMON
CAPITAL LLC, SOLOMON
CAPITAL 401(K) TRUST, *and*
SHELHAV RAFF,

                Plaintiffs,

– *against* –

IOVANCE BIOTHERAPEUTICS, INC.
*f/k/a* LION BIOTECHNOLOGIES, INC.
*f/k/a* GENESIS BIOPHARMA, INC.,
*and* MANISH SINGH,

                Defendants.

**OPINION & ORDER**

20-cv-1391 (ER)

RAMOS, D.J.:

    Solomon Sharbat, Solomon Capital LLC, Solomon Capital 401(K) Trust, and Shelhav Raff (collectively, "Plaintiffs") bring this action against Iovance Biotherapeutics ("Iovance") for the alleged breach of a finder's fee agreement. Doc. 15 (First Am. Compl.). Following a successful motion for sanctions by Iovance that resulted in the dismissal of all other claims, Plaintiffs' only remaining claims are for unjust enrichment and indemnity. Doc. 140 (Jan. 4, 2023 Op.) at 40–41.

    Before the Court is Iovance's motion for summary judgment on those remaining claims. Doc. 184. Although Iovance moved with respect to all claims brought by all plaintiffs (*see id.*), the opposition to Iovance's motion purported to be only on behalf of Sharbat and Raff (*see* Doc. 199); and Iovance's motion is therefore unopposed as to Solomon Capital LLC and Solomon Capital 401(K) Trust. For the reasons set forth below, Iovance's motion is granted as to all claims by all plaintiffs.

I.   **BACKGROUND**

   A.  **Factual Background**[1]

Sharbat and Raff are in the business of helping corporate clients with fundraising, mergers, and strategic alliances, and making introductions to facilitate those ends.  Doc.

---

[1] Except where otherwise noted, the following facts are drawn from Iovance's Rule 56.1 Statement (Doc. 188) and are deemed undisputed.

Local Rule 56.1(b) of the Southern and Eastern Districts of New York requires that "papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph in the statement of the moving party."  As with the moving party's statement of material facts, every statement controverting any statement of material fact must be supported by a citation to admissible evidence.  R. 56.1(d).  Failure to "specifically controvert[]" any paragraph in the moving party's statement "by a correspondingly numbered paragraph" in the opposing party's statement will result in the moving party's paragraph "be[ing] deemed to be admitted for purposes of the motion," in that they are both uncontroverted and admissible.  R. 56.1(c).  The Court's Individual Rules further require that "[o]pposing parties must reproduce each entry in the moving party's Rule 56.1 Statement, and set out the opposing party's response directly beneath it."  R. 2(C)(i).  These rules—simple to understand and apply—are designed to assist the Court by narrowing the scope of the issues to be adjudicated and identifying the facts relevant and admissible to that determination.

Unfortunately, Plaintiffs failed to submit a Rule 56.1 Statement in compliance with the Local Rules and the Court's Individual Practices.  Initially, the Court rejected Plaintiffs' first Opposition brief (Doc. 194) for failing to comply with filing rules, including by failing to submit any response whatsoever to Iovance's Rule 56.1 Statement, and directed Plaintiffs to refile.  Doc. 197 (Aug. 25, 2023 Order).  On September 8, 2023, Plaintiffs refiled their Opposition (Doc. 199), alongside which they submitted an "Affirmation in Opposition" that purported to be a "response to Defendant's Rule 56.1 Statement" and to contain "specific responses and disputes to those facts" that Iovance allegedly misrepresented as undisputed (Doc. 198).  But, that two-page document contained only seven numbered paragraphs, each with one or two sentences stating in conclusory fashion that Plaintiffs dispute certain of Iovance's factual assertions.  *Id.*  Plaintiffs did not attempt to include correspondingly numbered paragraphs to Iovance's Rule 56.1 statement (let alone to reproduce Iovance's statements in the manner required by the Court's Individual Practices), nor did Plaintiffs support any statement with a citation to any admissible evidence.  *Id.*

In its Reply in Support of its Motion for Summary Judgment, Iovance pointed out Plaintiffs' failure to dispute Iovance's Rule 56.1 statement in compliance with the Local Rules even upon Plaintiffs' second bite at the apple, and Iovance argued that the Local Rules therefore operated to deem all facts in Iovance's Rule 56.1 Statement as admitted.  Doc. 201 at 7–8.

On September 28, 2023, approximately one week after Iovance filed its Reply, without any explanation let alone leave of Court, Plaintiffs filed another "Affirmation in Opposition," which they again described as "their Opposition to Defendant's Rule 56.1 Statement."  Doc. 202.  Iovance objects.  Doc. 203.  The September 28 document duplicates the information contained in the September 8 "Affirmation in Opposition" and adds approximately 35 pages of refutations that appear to be Plaintiffs' attempts to comply with the Local Rules and the Court's Individual Practices.  Doc. 202.

But the September 28 document also falls far short of the mark.  First, the Local Rules require oppositions to the moving party's Rule 56.1 Statement be filed with the opposition to summary judgment (R. 56.1(d)), meaning that Plaintiffs' September 28 document is incurably untimely.  Second, it still fails to satisfy the requirement of Local Rule 56.1(d) because several factual assertions are purported to be supported only by case law, and other answers contain citations to indecipherable strings of numbers and letters that may be declarations and exhibits but were not submitted to the Court (*e.g.*, "Plaintiffs' First Production 0000085, and see also McPeak's email to Muskat 10 July 2013"; "BeyDecOppv.4, and 000336").  Doc. 202 at 13–14.  Iovance's counsel has also represented that it "has been unable to tie the citations [in Plaintiffs' September

2

188 ¶ 5.  Sharbat held a Series 7 securities license until November 2012, when FINRA revoked the license and banned him from participating in the securities industry.  *Id.* ¶ 7.  No other plaintiff has ever been licensed to broker securities.  *Id.* ¶¶ 6, 9.

Solomon Capital is a limited liability company, and Solomon Capital 401(K) Trust is a qualified retirement trust, for which Sharbat is the trustee.  Doc. 15 ¶¶ 4–5.  It is not disputed that Solomon Capital and Solomon Capital 401(K) Trust are owned and controlled by Sharbat; they have no employees and conduct no business activities other than holding assets on Sharbat's behalf.  *See* Doc. 140 at 2.

Iovance[2] is a publicly traded biotechnology company focused on the development of cancer therapies.  Doc. 188 ¶ 1.  On June 15, 2012, it signed a contract with MBA Holdings, LLC ("MBA") "to act as a finder to seek financing and other strategic relationships" by introducing investors to Iovance who would participate in planned equity financing ("the MBA Agreement").  *Id.* ¶ 10–11.  The Court has already held that Plaintiffs were neither direct parties to, nor intended beneficiaries of, the MBA Agreement, rejecting Plaintiffs' argument that they are third party beneficiaries of the MBA Agreement.  Doc. 140 at 24.  Nor are Plaintiffs indemnified parties within the

---

28 affirmation] to portions of the record."  Doc. 203 at 2.  Plaintiffs also purport to cite to an array of evidence in their memorandum of law itself, but, again, the citations are little more than indecipherable numbers and letters that may be declarations and exhibits but were not submitted to the Court.  *See, e.g.*, Doc. 199 at 7 ("Doc. Prod. No. 4 Corr. 283-3554, 00390–00391 SUPP002057").  Accordingly, the Court will not accept or consider Plaintiffs' September 28 affirmation.  All assertions in Iovance's Rule 56.1 Statement are therefore unopposed and deemed admitted by operation of local rule 56.1(c).

The Court notes, however, that "the local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).  The Court will therefore hold Iovance to its obligation to support the assertions in its Rule 56.1 statement with admissible evidence and consider only those allegations properly supported.  *See id.*

[2] In 2012, when the events at issue in this action occurred, the company was named Genesis Biopharma, Inc.  Doc. 188 ¶ 2.  On September 25, 2013, the company amended and restated its articles of incorporation, which changed the company's name to Lion Biotechnologies, Inc.  *Id.* ¶ 3.  On June 27, 2017, the company changed its name again to Iovance Biotherapeutics, Inc.  *Id.* ¶ 4.  For the sake of simplicity, the Court here refers to the company as Iovance, regardless of its actual name at the time.

meaning of the MBA Agreement. Doc. 188 ¶¶ 24–25; *see also* Doc. 186-9 (MBA Agreement) § 4.

Plaintiffs claim that, beginning in 2012, they began to perform pursuant to the MBA Agreement to seek out investors for Iovance.[3] *Id.* ¶ 15. Specifically, Plaintiffs claim Sharbat introduced two investors who participated in a financing that closed in November 2013: Joe Edelman of Perceptive Advisors and Wayne Rothbaum of Quogue Capital. *Id.* ¶ 18. But Raff has admitted he never met or otherwise communicated with either Edelman or Rothbaum. *Id.* ¶ 16. Sharbat has similarly admitted he never met either Edelman or Rothbaum, and his "only way of getting the deal to them" was by talking to another man, but he could not recall if that man was affiliated with either Edelman or Rothbaum. Doc. 186-6 (Dec. 16, 2021 Sharbat Dep. Tr.) at 183:18–185:9. Additionally, Sharbat acknowledged that Iovance's former chief executive officer ("CEO"), Anthony Cataldo, had already been in contact with Edelman about investing in Iovance months before Sharbat's alleged introduction. *Id.* at 186:14–187:4; *see also* Doc. 186-1 (Aug. 19, 2019 Sharbat Dep. Tr.) at 150:16–24. And, likewise, Iovance was introduced to Rothbaum by a mutual friend of Iovance's then-CEO, Manish Singh, not by Sharbat. Doc. 187 (Manish Singh Decl.) ¶ 6; *see also* Doc. 187-1 (email from Richard Lin introducing Singh and Rothbaum to one another). Rothbaum thereafter introduced Edelman to Singh to convince Edelman to invest as well. Doc. 187 ¶ 7.

B. Procedural History

Plaintiffs filed this suit on September 27, 2019 in New York state court against Iovance and Singh. Doc. 1-1. On February 18, 2020, Iovance removed the case to this Court. Doc. 1. Plaintiffs amended their complaint on May 1, 2020. Doc. 15.

On May 22, 2020, Iovance moved to dismiss for lack of personal jurisdiction (Doc. 18), and, on June 19, 2020, Singh also moved to dismiss (Doc. 21). The Court

---

[3] In their complaint, Plaintiffs alleged that MBA's chief financial officer informed Sharbat and Raff that they could earn substantial fees by working alongside MBA to find investors for Iovance. Doc. 15 ¶¶ 28–29.

4

denied both motions on March 26, 2021.  Doc. 29.  Iovance and Singh answered on April 30, 2021.  Doc. 37.

Iovance and Singh moved for judgment on the pleadings pursuant to Rule 12(c) on May 26, 2021 (Docs. 42 and 44, respectively), and the Court granted both motions on January 5, 2022  (Doc. 92).  As a result, all claims against Singh were dismissed, and the only claims remaining against Iovance were those for breach of contract on the MBA Agreement, unjust enrichment, and indemnification.  *Id.*  The Court also denied Plaintiffs' request for leave to file a second amended complaint on the basis that they did not exercise diligence or adequately explain why they could not have included the new allegations earlier.  *See id.* at 23–25.

On March 28, 2022, Sharbat, Solomon Capital, and Solomon Capital 401(K) Trust (collectively, "the Sharbat Parties")—but not Raff—entered into an assignment agreement ("the Assignment") with MBA and newly-formed MBA Sharbat Holdings Inc., a Wyoming corporation ("MBA Sharbat").  Doc. 111-6.  The Assignment provided that:

> *MBA owns all right, title and interest in and to the benefits of* [the MBA Agreement and that] in consideration of the services of the Sharbat Parties in assisting MBA in the performance of MBA's obligations under and pursuant to the MBA [Agreement], MBA agreed that it would pay [the] Sharbat Parties shares of the compensation due to MBA pursuant to the MBA [Agreement].

*Id.* at 2 (emphasis added).  Additionally, the Assignment indicated that the Sharbat Parties brought the instant action against Iovance "to recover the sums due pursuant to the MBA [Agreement]" and that, in a separate confidential letter (which was not submitted to the Court), the "Sharbat Parties and MBA . . . agreed to share all recoveries from prosecution of [the instant action]."  *Id*.  "For that purpose," the Assignment stated that MBA and the Sharbat Parties formed MBA Sharbat, a corporation "whose shares of capital stock are owned by MBA and [the] Sharbat Parties."  *Id*.  The Court was first advised about the creation of MBA Sharbat on April 1, 2022 when new counsel filed a notice of appearance

5

on behalf of Plaintiffs (Doc. 108) along with a letter stating that counsel "also represent[ed] new proposed Plaintiff MBA Sharbat" (Doc. 112).

That same day, Plaintiffs filed a motion for leave to amend the FAC on behalf of non-party MBA Sharbat.  Doc. 111.  The proposed second amended complaint would have eliminated the four named plaintiffs and named MBA Sharbat as the sole plaintiff in the action.  Doc. 111-2.  It also would have brought claims solely for breach of contract and declaratory judgment based on the MBA agreement and revived already-dismissed breach of contract claims based on other agreements with MBA.  *Id.*  Raff was not mentioned in the motion to amend, and the proposed second amended complaint did not include unjust enrichment or indemnity claims.  *Id.*  Iovance opposed further amendment of the complaint.  Doc. 113.  Although the Court granted leave to amend, the Court warned Plaintiffs to "be very careful" in doing so.  Doc. 121 (April 15, 2022 Hr'g Tr.) at 11:12–13.  Iovance then sought leave to file a Rule 11 motion for sanctions, and the Court granted Iovance leave to file its motion as well.  *Id.* at 12:1–21.

On May 16, 2022, Iovance filed its Rule 11 motion, asking the Court to:  (1) strike MBA Sharbat's motion for leave to amend; (2) dismiss the FAC; and (3) order Plaintiffs and their counsel to pay $620,426 for attorneys' fees and $135,305 for expenses that Iovance has incurred defending against Plaintiffs' allegations.  Doc. 124 at 8.

On January 4, 2023, the Court granted Iovance's motion for sanctions.  Doc. 140.  The Court declined to dismiss the first amended complaint in its entirety, as the merits of Plaintiffs' unjust enrichment claims and indemnity claims had not been argued (because they were not brought in the proposed second amended complaint) and therefore could be supportable, but the Court dismissed the balance of the complaint with prejudice.  *Id.* at 40.  The Court reasoned, in part, that the record before it showed that Plaintiffs were neither direct parties to the MBA Agreement, nor intended beneficiaries thereof.  *Id.* at 24.  The Court also struck the motion for leave to amend and ordered Plaintiffs to pay Iovance's attorneys' fees incurred in connection with the Rule 11 motion.  *Id.* at 40–41.

6

The Court further directed Iovance to submit an accounting of its costs and fees (*id.* at 41 n.32), but Iovance has not yet done so, and the measure of the sanctions award therefore remains undetermined.

Iovance filed the instant motion for summary judgment on the remaining claims on July 10, 2023.  Doc. 184.

## II.     LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free School Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might "affect the outcome of the litigation under the governing law."  *Id.* (quoting *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)).  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Medical Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).  In opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than

show there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

Where the non-moving party fails to submit corroborating evidence or allege specific factual disputes, the Court will not "search the record for genuine issues of material fact or to 'consider what the parties fail to point out' in their 56.1 Statements." *Amato v. Hartnett*, 936 F. Supp. 2d 416, 432 n.6 (S.D.N.Y. 2013) (citation omitted). Rather, a nonmoving party's failure to contest the moving party's factual assertions generally "results in a grant of summary judgment [for the moving party] once the [C]ourt assures itself that Rule 56's other requirements have been met." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000)).

### III. DISCUSSION

As a preliminary matter, the Court reiterates that Solomon Capital LLC and Solomon 401(K) Trust did not oppose Iovance's motion for summary judgment; only Sharbat and Raff did. *See* Doc. 199. But "a district court must review the evidence submitted in support of an unopposed summary judgment motion and cannot grant the motion by default." *Waller v. Muchnick, Golieb & Golieb, P.C.*, 523 F. App'x 55, 57 (2d Cir. 2013) (citing *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004)). Accordingly, the Court reviews the evidence as against all four plaintiffs, not merely Sharbat and Raff. It ultimately holds, however, that Iovance has satisfied its burden under Rule 56, and summary judgment is therefore appropriate as to all plaintiffs on the remaining claims. *See id*; *T.Y.*, 584 F.3d at 418.

8

### A. Iovance is Granted Summary Judgment on the Unjust Enrichment Claim

Iovance argues it is entitled to summary judgment on the unjust enrichment claim for four independent reasons: (1) it is duplicative of the breach of contract claim; (2) Plaintiffs did not enrich Iovance; (3) Plaintiffs have offered no evidence of the value of their services; and (4) Plaintiffs cannot be compensated for acting as unlicensed broker-dealers. Doc. 185 at 10.

Iovance first argues Plaintiffs' unjust enrichment claim is merely duplicative of the dismissed breach of contract claim because the conduct at issue is identical for both claims: that Iovance engaged Plaintiffs to find potential investors in return for a finder's fee. *Id.* at 10–11 (citing *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 318 (S.D.N.Y. 2021); *Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 199 (S.D.N.Y. 2021)). Plaintiffs respond that "courts have allowed plaintiffs to advance past the pleading stage on an alternate theory of unjust enrichment, even when a breach of contract claim is dismissed." Doc. 199 at 11. Unfortunately, both parties miss the mark by exclusively relying upon case law concerning Rule 12 motions. The issue is no longer one of pleading, but now, at summary judgment, is addressed to the merits. And while it is true that courts will not allow plaintiffs a double recovery for the same injuries based on contract and quasi-contract theories but will permit plaintiffs to plead both theories in the alternative, *see Dervan v. Gordian Grp. LLC*, No. 16-cv-1694 (AJN), 2017 U.S. Dist. LEXIS 28551, at *32–33 (S.D.N.Y. Feb. 28, 2017) (collecting cases), neither proposition is relevant here. There is no risk of double recovery here because Plaintiffs' breach of contract claim has already been dismissed. Accordingly, Plaintiffs' unjust enrichment claim is not duplicative of the dismissed breach of contract claim, and the Court will not grant Iovance summary judgment on that basis.

Iovance next argues that Plaintiffs did not enrich Iovance because they did not introduce any investors to Iovance and therefore provided no services for which they deserve compensation. Doc. 185 at 11, 14–15. Plaintiffs' claim is predicated solely on

9

their allegations that Sharbat, but not the other Plaintiffs, introduced Edelman and Rothbaum to Iovance.  *Id.*  But the record before the Court establishes that Cataldo introduced Edelman to Iovance six months before Sharbat ever met Edelman, and a mutual friend introduced Rothbaum to Singh (Iovance's then-CEO).  Doc. 186-1 at 150:16–24; Doc. 186-6 at 186:14–187:4; Doc. 187 ¶¶ 6, 7; Doc. 187-1.

In opposition, Plaintiffs argue, seemingly for the first time, that Iovance was unjustly enriched also because Raff introduced "New World" to Iovance as an investor (although New World did not thereafter invest), Sharbat arranged for Jacob Schacter to join Iovance's scientific advisory board, and Sharbat introduced Rothbaum to Cataldo before Rothbaum met Singh (who took over as CEO from Cataldo).  Doc. 199 at 13–22.

Plaintiffs' new allegations are not enough to save their claim.  First, "[t]he law is clear that a party may not introduce a new theory in opposition to a motion for summary judgment."  *Solutions Express Ltd. v. Ashley Furniture Indus., Inc.*, No. 20-cv-7843 (CS), 2023 WL 2393861, at *6 n.8 (S.D.N.Y. Mar. 7, 2023) (collecting cases).  Plaintiffs may not claim now, therefore, that their unjust enrichment claim is based on entirely different introductions than they have previously alleged.  *See id.*  Even more glaringly, even if the Court did consider the new allegations, Plaintiffs have failed to submit admissible evidence to substantiate them.  Accordingly, Plaintiffs have failed to satisfy their burden to produce sufficient admissible evidence to raise genuine issues of fact based on more than mere unsupported assertions, conjecture, or surmise.  *See McClellan*, 439 F.3d at 144; *Saenger*, 706 F. Supp. 2d at 504; *Goenaga*, 51 F.3d at 18.  Without evidence that Plaintiffs provided services to Iovance, Plaintiffs' claim for unjust enrichment cannot survive.  *See Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL), 2023 U.S. Dist. LEXIS 81377, at *36–37 (S.D.N.Y. May 8, 2023); *Wilson v. Dantas*, No. 12-cv-3238 (GBD), 2013 U.S. Dist. LEXIS 3475, at *23–24 (S.D.N.Y. Jan. 4, 2013).  In sum, New World did not invest in Iovance, Plaintiffs were not responsible for introducing Rothbaum and Edelman to Iovance, and Plaintiffs have never alleged any basis that they were entitled to

compensation for introducing Schacter or other potential scientific advisory board members. The Court therefore grants Iovance summary judgment.

Finally, Iovance argues that Plaintiffs are not entitled to a finders' fee because that would be compensating them for acting as broker-dealers, but none of the Plaintiffs held a securities license to allow them to act as broker-dealers at the time of the alleged introductions in 2013. Doc. 185 at 15–18. Plaintiffs respond that they "act[ed] merely as finders rather than broker dealers," and therefore no license was required.[4] Doc. 199 at 23. While a person's receipt of commissions to induce investment in securities is "a hallmark of broker-dealer activity," which requires a license, "it is not a categorical rule, and the inquiry remains fact-specific" and requires analysis of factors such as whether the individual made valuations as to the merits of the investment or gave advice, was involved in negotiations between the issuer and investor, and was an active rather than passive finder of investors. *Dervan v. Gordian Grp. LLC*, No. 16-cv-1694 (AJN), 2017 WL 819494, at *10–11 (S.D.N.Y. Feb. 28, 2017) (citations omitted). Neither party here has submitted sufficient legal authority or factual evidence for the Court to conduct the requisite fact-specific inquiry, *see id*, so as to be able to conclude whether Plaintiffs did or did not act as unlicensed broker-dealers. Moreover, because the Court already granted Iovance summary judgment on the unjust enrichment claim as noted above, the Court need not decide the broker-dealer issue.

---

[4] Plaintiffs also argued in passing that res judicata precludes Iovance from arguing that Plaintiffs lack a broker-dealer license because the New York state court already twice dismissed that "claim." Doc. 199 at 28 (citing Docs. 199-9, 199-10, 199-11). But none of the exhibits that Plaintiffs cite demonstrate that the New York state court ever squarely addressed the issue, which Iovance presented as an affirmative defense, not a counterclaim. To the contrary, Doc. 199-11 appears to be a one-page excerpt of a decision dismissing *Plaintiffs'* complaint.

Plaintiffs also note that Iovance assured them that they did not need a broker-dealer license to perform under the MBA Agreement, so "promissory and equitable estoppel waiver" should apply. Doc 199 at 24. To the extent that Plaintiffs seek to invoke promissory estoppel as an alternate quasi-contract theory upon which to premise their recovery, they may not do so now and thereby entirely change the nature of their claim. *See Solutions Express Ltd.*, 2023 WL 2393861, at *6 n.8. To the extent that Plaintiffs attempt to invoke equitable estoppel, the Court need not exercise its discretion to find Iovance's arguments are unfair, as it already dismisses the unjust enrichment claim on other grounds.

### B. Iovance is Granted Summary Judgment on the Indemnity Claim

Iovance further argues that it is entitled to summary judgment on Plaintiffs' indemnification claim because the Court already found that Plaintiffs are neither parties to nor third-party beneficiaries of the MBA Agreement.[5]  Doc. 185 at 18 (citing Doc. 140 at 24).  Plaintiffs respond that they fall within the definition of indemnified parties in the MBA Agreement, and several collateral agreements also affirm that they are indemnified parties.  Doc. 199 at 28–29.

First, the Court's prior holding that Plaintiffs are not parties or third-party beneficiaries with respect to the MBA Agreement (Doc. 140 at 24) precludes Plaintiffs' indemnity claim based on the MBA Agreement.  *See Rosales v. Vieira Sardinha Realty, LLC*, No. 13-cv-06980 (TPG), 2017 WL 4157365, at *6 (S.D.N.Y. Sept. 18, 2017) ("In cases where a third party—one that is not a party to the contract—[is] . . . not expressly named in the contract, and where there is no sign of an intent by contracting parties to indemnify a third party, the contracting party is not obligated to indemnify a third party."); *see also McCall v. Chesapeake Energy Corp.*, 817 F. Supp. 2d 307, 313 (S.D.N.Y. 2011), *aff'd*, 509 F. App'x 62 (2d Cir. 2013) (holding that only parties to and intended third-party beneficiaries of a contract may sue to enforce or recover on that contract).  Moreover, the indemnification provision of the MBA Agreement itself does not contemplate indemnifying Plaintiffs, as they are not listed in the express closed list of indemnified parties.  Doc. 188 ¶¶ 24–25; *see also* Doc. 186-9 (MBA Agreement) § 4.  Second, "[t]he law is clear that a party may not introduce a new theory in opposition to a motion for summary judgment."  *Solutions Express Ltd.*, 2023 WL 2393861, at *6 n.8.  Plaintiffs have previously represented that their indemnity claim was predicated solely on

---

[5] Iovance also argues that the indemnity provision of the MBA Agreement does not apply to Plaintiffs because (1) the provision only covers claims by third parties against the indemnified parties, not the indemnified parties against Iovance, as in a standard contract claim between contracting parties, and (2) Plaintiffs have offered no evidence of loss within the meaning of the indemnification agreement, nor any other damages.  Doc. 185 at 18–19.  Plaintiffs do not respond to these arguments (*see* Doc. 199 at 28–29), which may constitute an additional basis upon which to grant Iovance summary judgment, but the Court need not reach these issues as the Court dismisses the indemnity claim on other grounds.

12

the MBA Agreement. *See* Doc. 15 ¶¶ 119–23. The Court will not consider, in opposition to Iovance's summary judgment motion, Plaintiffs' new theory of indemnity based on entirely different agreements. *See Solutions Express Ltd.*, 2023 WL 2393861, at *6 n.8. Accordingly, Iovance's motion for summary judgment on Plaintiffs' indemnification claim is granted.

## IV.   CONCLUSION

For the reasons set forth above, Iovance's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the motion (Doc. 184) and close the case.[6]

It is SO ORDERED.

Dated:   October 26, 2023
         New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.

---

[6] The precise amount of sanctions (*i.e.*, that which Iovance incurred in attorneys fees and costs in connection with the Rule 11 motion) to be imposed remains yet undetermined, as Iovance has not yet submitted an accounting of its fees and costs as the Court directed (Doc. 140 at 41 n.32). Although Iovance submitted a declaration stating the amount of hours its attorneys and paralegal worked on the opening Rule 11 motion and requesting payment at their standard billing rates (*see* Doc. 126), which Plaintiffs thereafter opposed (Doc. 158) and to which Iovance replied (Doc. 159), Iovance has yet to file contemporaneous billing records or other documentary evidence substantiating its claimed fees and costs. Moreover, Iovance's prior declaration did not account for time and expenses spent on its reply in support of the Rule 11 motion. *See* Doc. 126.

Courts "limit the award of [sanctions of attorneys' fees] to those fees that are supported by documentation" such as contemporaneous billing records properly authenticated by affidavit. *See Klein v. Aicher*, No. 19-cv-9172 (RA), 2021 U.S. Dist. LEXIS 92468, at *12 (S.D.N.Y. May 14, 2021) (citation omitted); *Shanchun Yu v. Diguojiaoyu, Inc.*, No. 18-cv-7303 (JMF), 2019 U.S. Dist. LEXIS 201808, at *25 (S.D.N.Y. Nov. 20, 2019).

Accordingly, Iovance is directed to submit, by November 10, 2023, an affirmation attaching an accounting of the attorney hours spent and costs incurred in connection with the Rule 11 motion. Failure to do so may result in the reduction of the sanctions award. Plaintiffs may then file any opposition to the accounting by no later than November 17, 2023. Closure of the case will not prevent the parties from filing the affirmation and accounting or opposition thereto.